STATE OF TENNESSEE *ex rel.* J. G. STEWART *v.* A. S. MARKS, Governor, and C. N. GIBBS, Secretary.

1. MANDAMUS. *Election. Board of inspectors. Public suit and should be advanced. When.* A mandamus case brought to compel a board of inspectors of election of a Representative to the General Assembly to count the votes and declare the result, is a suit of a public nature, which should, under the statutes in that regard, be advanced on the dockets, and heard and determined with the least delay consistent with its proper investigation.

2. SAME. *Admissions in return.* In a mandamus case, if the defendant make a return to the alternative writ, by answer under oath, as required by law, the relator is entitled to the benefit of all admissions contained in the return, and to a peremptory writ if the facts stated are not sufficient to constitute a defense.

3. SAME. *Election. Board of inspectors. Agreed case. Governor. Ministerial duty.* Whether a mandamus will lie against the Governor of the State to compel him to discharge a purely ministerial duty, is doubtful; but if he and the Secretary of State, constituting a board of inspectors to count the vote and declare the result of an election, make a return to the alternative writ, stating the facts, expressing their willingness to discharge the duty, and submitting the point on which they disagree to the decision of the court, the court will act as upon an agreed case.

4. SAME. *Admissions in answer.* In such a case the admission in the answer of the defendants, that the certified copies of the returns of the counties composing the election district are correct, is sufficient to sustain the proceeding if not appearing that there has been any failure to make the returns required by law.

5. ELECTION. *Returns. Board of inspectors. Illegal vote.* Where the election returns upon which the board of inspectors are called upon to act, and as to the correctness and completeness of which they made no complaint, show that one of the candidates received so many legal votes and "one illegal vote, as appears from the certificate of the judges and inspectors and clerks holding the election," in a certain civil district of one of the counties, and the judges of the election were authorized by statute, after the tickets of the voters had been

The State *ex rel. v.* Board of Inspectors.

received and deposited in the ballot box, if there should be two tickets rolled up together, or if any ticket contained the names of more persons than the elector had a right to vote for, not to number the tickets in taking the ballots, and to adjudge, if void, such illegal vote ought not to be counted.

## FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

JNO. H. SAVAGE and J. C. MALONE for plaintiff.

S. WATSON, JR., for defendants.

COOPER, J., delivered the opinion of the court.

By the act of the Legislature of 1872, ch. 5, it is made the duty of the judges of election in each county in this State, in the case of the election of the State Senators and Representatives, within ten days after the election, to cause one copy or set of the election books or lists to be filed with the clerk of the circuit court, and another copy with the clerk of the county court of the county in which the election was held, and to furnish the sheriff of said county with a copy properly certified. In counties which singly elect a Representative, or two or more Representatives, the polls are to be compared at the court-house in said counties, and the sheriff shall issue certificates of election to the persons receiving the largest number of votes cast at the election. In all senatorial and representative districts composed of more than one county, it is made the duty of the sheriff of each

county, within ten days after the election, to certify and forward to the Secretary of State "one copy or set of said books." The Governor and Secretary of State are constituted a board of inspectors, whose duty it shall be to compare the vote for Senators and Representatives in the several senatorial and representative districts, and declare the result. When the results of the election shall have been ascertained and announced, the Governor shall issue certificates of election to the persons receiving the largest number of votes in each district, which certificates shall be *prima facie* evidence of such election.

The substance of this act is, that in counties which singly elect Representatives, the sheriff of that county is required to compare the polls and issue certificates of election to the persons receiving the largest number of votes cast in the county; and in districts composed of two or more counties, the Governor and Secretary of State are made a "board of inspectors" to compare the vote and declare the result, after which the Governor will issue certificates of election "to the persons receiving the largest number of votes cast in the district."

On the 17th of December, 1880, the mandamus in this case was sued out in the name of the State on the relation of James G. Stewart against Albert S. Marks as Governor of the State, and C. N. Gibbs as Secretary of State, constituting the board of inspectors under the foregoing act, to show cause why a peremptory mandamus should not issue requiring them, as such board, to discharge the duty imposed upon them

by law, and declare the result, and that the relator had received the largest number of votes cast at the recent election for Senators and Representatives in the representative district composed of the counties of Bradley and Polk.

The petition is accompanied by certified copies of the return made by the sheriff of each of these counties to the Secretary of State, under the provisions of the act of 1872. The return of the sheriff of Bradley county shows that, for the Representative of the district composed of these two counties, M. T. Foute received in Bradley county 929 votes, and James G. Stewart 785 votes, giving a majority to Foute of 144 votes. The return of the sheriff of Polk county shows that for the same office J. G. Stewart received in that county 570 votes, and M. T. Foute 425 "legal votes" and one illegal vote, as appears from the certificate of the judges and inspectors and clerks holding the election in the second civil district of Polk county. If the "legal votes" are alone counted, the majority for Stewart will be 145 votes, being one vote in excess of Foute's majority in Bradley county. In this view, the result of the election should be declared in favor of Stewart. If, however, the "one illegal vote" is counted for Foute, the votes of the respective candidates in the district are exactly equal, and neither is entitled to have the result declared in his favor.

To the mandamus *nisi,* Albert S. Marks and C. N. Gibbs file a joint answer. They admit that the first is the Governor and the other the Secretary of

the State, and, as such, compose the board of inspectors under the act of 1872. They admit, also, that the certified copies of the returns of Polk and Bradley counties are correct. They further admit that they refused, as a board, to declare the result of the election in the representative district composed of Polk and Bradley counties in favor of the relator, because respondent Marks was of opinion, from the face of the returns, that the relator had a majority of one vote, while the respondent Gibbs was of opinion that the vote of each candidate was equal. The answer concludes thus: "Respondents are willing that the courts may settle the question."

The circuit court refused to grant a peremptory mandamus, and dismissed the petition. The relator appealed.

By the act of 1868, ch. 67, secs. 6 and 7, the courts are authorized to set for trial, without reference to its relative position on the docket, any civil cause in which the State is a party in interest, "whether the State is directly a party to the same or interested * * in another way." By the act of 1871, ch. 125, it is made the duty of the courts of this State to advance upon their dockets causes which may at any time be pending therein, the decision of which shall directly involve questions concerning the public revenues, or questions concerning public officers as to their eligibility, qualifications or appointment, or their lawful functions. The object of these acts is to provide for the prompt disposition of all cases of a public nature in which the State may be directly or in-

directly interested, or which involve the appointment, eligibility and functions of public officers. The State undoubtedly has an interest in the question, whether two of its counties, composing a representative district, shall be represented in the General Assembly, if, indeed, the relator be entitled to the certificate of election which he claims. In this view, we think the cause should be advanced, so that it may be heard and determined with the least delay consistent with its proper investigation on the merits. The cause has been fully argued on both sides, and we have also, in addition, had the opinion of his Honor, the Circuit Judge, and the opinion of the Governor and Secretary of State, all of which have been printed.

The first objection made in argument to the relief sought is, that there is no evidence of any returns before the court upon which to base a decision. The argument is, that the petition and the exhibits attached thereto have performed their purpose after the alternative writ was granted, and cannot be noticed upon the hearing, and that the record does not show by a bill of exceptions that any evidence was in fact introduced.

The power to issue the writ of mandamus, and the practice under the writ are, to some extent, regulated in this State by statute: Code, sec. 3567 *et seq.* Sec. 3570 provides: "On the return day of the alternative writ, or on such further day as the court may allow, the party on whom the writ has been served may show cause by a sworn answer, and issue may be be made thereon, and tried accordingly." Sec.

2—VOL. 6.

3572 is: "If the answer deny any material facts stated in the petition, the court may determine the issue upon evidence, or cause them to be submitted to a jury." The first of the sections thus quoted was intended to do away with the common-law rule of the conclusiveness of the return, and provide for the making and trying of issues of fact arising upon the statements of the answer. The second of these sections recognizes the petition as a pleading, upon the denial of the averments of which by the answer issues might be raised and determined.

If a respondent desires to take advantage of any defect in the application for a mandamus, he should do so in the first instance, since by making the return to the writ he thereby waives all defect of form. So, all objections to the alternative writ should be made by a motion to quash, or some equivalent application or pleading. If the respondent answers by making a return as required by law, the relator is entitled to the benefit of all admissions contained in the return. And if the relator moves for a peremptory writ upon the pleadings, the effect of such motion is the same as a demurrer to the return for not stating facts sufficient to constitute a defense: High Ext. Rem., secs. 521, 523, 527.

In the case before us the defendants have made return by a sworn answer. They have not raised any objection to the preliminary proceedings, nor to the form or substance of the alternative writ. They have answered to the merits, submitting the point of difficulty to the decision of the court. The relator

has, in effect, moved for the peremptory writ upon the "pleadings," to use Mr. High's word; upon the petition and answer, if we resort to the language of the Code.

The rights of the relator must turn either upon the sufficiency of the facts stated in the petition and answer, and admitted or disclosed by the latter, or upon the facts of the return alone. In the former view, the admissions of the answer relate to the statements of the petition and the exhibits thereto. In the latter view, the admissions must be taken by themselves.

The defendants in their answer, after conceding their official character and that they constitute the board of inspectors under the act of 1872, say "they admit that the certified copies of the returns of Polk and Bradley counties are correct." If this language is to be fairly construed by its own light, it plainly means that the copies of the returns of Polk and Bradley counties, which were required by the act of 1872 to be certified to them as a board of inspectors, have been certified to them and are correct. In this view, it must be taken that the copy or set of the poll books required to be forwarded to them by the sheriff, had actually been received.

If, however, the answer be taken in connection with the petition and exhibits, which was no doubt intended, then the certified copies of the sheriffs' returns as exhibited with the petition, are admitted by the respondents to be correct. In that view, we have the returns in the record upon which the defendants

undertook to act as a board of inspectors, conceding their genuineness, and only differing as to the construction which they should put upon them. This difficulty the defendants, without raising any objection to the form or substance of the proceedings by mandamus, have, in the nature and almost in the form of an agreed case, submitted to the decisions of the courts. And *non constat* that the copy of the election books had not been returned also. These books were. not necessary to the decision of the point raised.

The specific duty of the board of inspectors, under the act of 1872, is to compare the vote as certified and forwarded to the Secretary of State by the sheriff of each county in the district, and declare the result. This duty, involving simply the labor of counting the votes returned and determining who has received the highest number of votes, is strictly ministerial. The board, it is true, determine whether the papers received, purporting to be election returns, are in fact such returns, are genuine, intelligible, and authenticated as required by law, and to this extent its duties are *quasi* judicial. But it is universally conceded that such *quasi* judicial duties do not affect the purely ministerial character of simply counting the votes and declaring the result. All the authorities agree that such a board of inspectors or canvassers may, as a general rule, be compelled to perform the ministerial duty by mandamus: High Ext. Rem., sec. 56 *et seq.* This court has so held: *Saffrons v. Ericson*, 3 Cold., 1.

The authorities are, however, in conflict upon the point whether a mandamus will lie against the Gov-

ernor of the State to compel him to discharge such a duty, although purely ministerial: High Ext. Rem., sec. 119 *et seq.* It is not necessary for us in this case to critically examine the decisions with a view to settle the rule in this State, or whether the fact that the proceeding is against a board of which the Governor is a member, and not against the Governor individually, would make any difference, for the Governor, in his answer, declares his willingness to discharge the duty in question, and the Secretary of State submits to the decision of the court, and is, perhaps, not entitled to the immunity conceded by some of the cases to the Governor: *Kendall* v. *United States*, 12 Pet., 524; *Marbury* v. *Madison*, 1 Cranch, 49; *State* v. *Lawrence*, 3 Kan., 95.

His Honor, the Circuit Judge, placed his decision, in dismissing the petition, upon the ground that it is made the duty of the sheriff, by the act of 1872, to certify and forward to the Secretary of State "one copy or set of said books," meaning the election books or list of voters required to be kept by law, and that the board of inspectors cannot be compelled to compare the vote and declare the result with nothing before them but the certificate of the sheriff of the contents of the certificate of the judges, inspectors and clerks holding the election.

No such point is made by the answer of respondents. They as a board of inspectors, in their *quasi* judicial capacity, have determined that the returns are genuine, intelligible and authenticated as required by law, and, as we have seen, for aught that appears, a

copy or set of the election books was returned by the sheriffs to the Secretary of State. Even if the facts be otherwise, and the defendants might have demanded a strict compliance with the law, they have not done so, nor is any such question submitted to the court. It must, on that supposition, be presumed that they were satisfied that a list of the names of the electors, for that is all the election books would show, was not necessary to enable them to discharge their ministerial duty. The Code, while providing for the preservation of the poll books or lists of the names of voters, and their deposit, duly authenticated, with the clerks of the circuit and county courts, makes provision for the contingency of the parties failing to perform these duties: Code, secs. 867–870. The result of the election is not made to depend upon a compliance with these directions. The Code, sec. 887, moreover, provides that no return, poll list or certificate shall be set aside or rejected for want of form, nor on account of its not being strictly in accordance with the directions given, if the same can be clearly understood.

This is a general provision, applicable to the returns, poll lists and certificates required by law, and would equally apply to the same documents, although made returnable, by a subsequent law, to different officers. It is said, as a matter of fact, that a literal compliance with the words of the act of 1872 has never been pursued in practice, the sheriffs, instead of a "copy or set of said books," only certifying the result of the canvass of votes, as shown by the certificate

of the judges of election and the election books. Without undertaking to say that a literal compliance with the law is not necessary to compel the board of inspectors to perform their duties if they choose to stand upon the letter of the law, the court must be content with any returns which they have not rejected for want of form or because not strictly in accordance with the directions given. Their decision upon these points is final in any proceeding against them to compel a discharge of their ministerial duties.

This brings us to the consideration of the points upon which the members of the board of inspectors differed, and which they "are willing that the courts may settle." That point is whether the one vote shall be counted for the candidate in whose favor it was cast, which is described in the sheriff's return as "one illegal vote, as appears from the certificate of the judges and inspectors and clerks holding the election in the second civil district of Polk county."

Of course, no one would contend that an illegal vote ought to be counted.

The argument, as put by the Secretary of State and by counsel, is that the board of inspectors cannot declare a vote illegal, neither can the sheriff, and that the judges of election have, by putting it on the list, counted the particular vote and thereby estopped themselves from declaring it illegal.

It is said that after a ballot has been put in the box, and the name of the voter entered on the poll list, the duty of the judges is no longer judicial or discretionary. It is conceded, however, that by the

express provisions of the Code, sec. 862, the judges are required, in the case of a doubtful ticket or a ticket containing more names than the elector is entitled to vote, to "hold it void, cast it out, not number it in the tally list, nor return it at all tb the sheriff." They may adjudge the vote void and throw it out without further notice, but it is insisted they cannot "count and return a ballot as a vote received by a candidate and accompany it with a certificate that it is illegal." "If it was illegal," says the Secretary of State, "possibly they might have so held and adjudicated it at the time, but once having counted it, and certified on the poll list and tally sheets to the sheriff, they are estopped and concluded in the matter." The board of inspectors having no power to try the legality of the vote, can only count the votes received, as shown by the return.

It is clear that neither the sheriff nor the board of inspectors, whose duties in this regard are merely ministerial, can declare a vote illegal. That duty belongs to the judges of election. Provisions are made by law for the protection of the purity of the ballot-box: Code, 846 *et seq.* The right of the voter may be tested in advance, after which, if the decision be favorable, the vote is deposited in the ballot-box. When the election is finished the ballot-box is opened, and the names of the persons voted for read aloud from each ballot. Then follows the following provision: "If there be two tickets rolled up together, or if any ticket contains the names of more persons than the elector has a right to vote for, in either of these

cases such ticket shall not be numbered in taking the ballots, but shall be adjudged void ": Code, sec. 862.

The right of the judges to adjudge a vote illegal in the cases specified in this section, is beyond question. Whether they can go further and declare the illegality of a vote in any other case, after it has been deposited in the ballot-box, it is not now necessary to decide. The presumption of law is always in favor of the proper discharge of duty by an official charged with its performance. If there be any ground upon which a vote may be declared illegal by the judges of election, and they have so declared, the declaration is *prima facie* within the power.

It seems to be thought, however, that the judges can only exercise their power, by throwing out the vote, saying nothing about their action in their certificate. The statute does not say that " such ticket shall not be numbered in taking the ballots, but shall be adjudged void." It does not say that the fact shall not be mentioned in the certificate of the judges, and it is obvious that if this be not done in a case where the ticket has been deposited in the box, and the elector's name entered on the poll books, there would be a discrepancy in number between " the lists of the names of voters" and the votes as counted. The judges could not make the lists correspond in number with the votes by striking out one of the names, for they might not know the name of the guilty voter. Without undertaking to say that the judges might not take the course suggested, and simply cast out the vote, correcting the polling list if they can do so, we

do not think that after having adjudged a ticket illegal and void, their adjudication is rendered less effective by stating the fact in their certificate. They have not counted the vote. They have counted and certified the legal votes, and certified also, as a fact, that one vote was received which they adjudge to be illegal. There is no inconsistency in the facts returned, nor anything in those facts which would authorize a ministerial officer to count a vote declared by the proper officers illegal.

The judgment must be reversed and a peremptory mandamus issued.

FREEMAN, J., delivered the following dissenting opinion:

The petition for mandamus in this case states that petitioner was a candidate at the late November election for joint Representative of the counties of Polk and Bradley in the General Assembly of the State. He claims that as the result of that election, he received a majority of one vote of all the votes cast, and was therefore elected. As evidence of this fact, he refers to the returns of the sheriffs of said counties, now on file in the office of the Secretary of State, transcripts of which he files and makes part of his petition. These transcripts or copies of the sheriffs' returns from these counties are presented by petitioner as the sole evidence of his election and the basis on

which the action of the court is invoked in his favor. From this evidence he assumes that it appears he has received the legal majority of the votes, and then, that the Governor and Secretary of State have failed and refused to perform the duty assigned them by law, to issue him a certificate of his election, which by the act of 28th of March, 1872, is made *prima facie* evidence of such election. Based on these allegations of fact, the petitioner prays for a writ of mandamus to compel these officers, as a board of inspectors, to discharge the duties imposed on them, to declare him elected, and issue to him a certificate of such election, or show cause why they so refuse.

This is the case made by petitioner in his petition.

The respondents acknowledged service of the alternative writ of mandamus issued on the above petition, and without raising any objection to the jurisdiction of the circuit court, filed an answer, which is substantially as follows:

They admit the character in which they are sued, and that as such they are constituted by law the "board of inspectors," to declare the result of the election in this case, under the act of 1872.

They then say, "they admit that the certified copies of the returns of Polk and Bradley counties are correct," and that they did and still refuse to declare the relator, Stewart, elected, and for that reason the certificate had been denied when demanded. This action of the board was caused by the fact that Governor Marks was of the opinion that, from the face of the certificate, Stewart had a majority of one vote, and

was, therefore, entitled to the certificate, while Mr. Secretary Gibbs was of the opinion that the vote of each candidate was equal, and, therefore, neither was elected or entitled to a certificate of the fact, and so no certificate was issued.

The answer then closed by the statement that "respondents are willing that the courts may settle this question."

This is the case made by respondents, on which the circuit judge, the Hon. Frank Reid, held the relator not entitled to the relief sought, and, therefore, dismissed the petition, from which there is an appeal in error to this court.

The judgment of the court, as found in the record, states that the cause was heard upon the petition, writ, answer, and argument of counsel, and upon consideration thereof, the court adjudged, as he did, the relator not entitled to the relief sought.

On this judgment, based on these facts, that is, the statements of the petition, writ and answer, error is assigned, and we are called on to review and reverse the action of his Honor in this case. In other words, we are called on to adjudge, whether, on the facts before this board of inspectors, as shown by the record before us, or the case on which they have acted in refusing to issue to the relator a certificate of his election, they have violated his legal rights, failed to perform the duty imposed upon them by law, and therefore should be compelled by mandamus to do what they have failed and refused to do, and of which the relator now complains.

We take this to be a fair statement of the legal question presented for our decision, to the solution of which we now direct our attention.

We think this statement of the question before us is involved in the nature and principle that underlies the remedy resorted to, that is, a mandamus. The principle on which this remedy is properly applied is thus given by this court: " Whenever a statute gives power to or imposes an obligation upon a particular person to do some act or duty, and provides no specific remedy on non-performance, a mandamus will lie." It will, therefore, be observed that it is one of the remedies resorted to when the person desires to be placed in possession of a right illegally and unjustly withheld from him. It does not award damages as a compensation for an injury, but it seeks to give the thing itself—the withholding of which constitutes the injury complained of: *Mobile & Ohio Railroad Co.* v. *Wisdom,* 5 Heis., 155. Opinion by Nicholson, C. J., citing Tapping & Moses on Mandamus.

The principle thus announced involves three elements: first, a right in the applicant; second, a legal duty imposed upon the defendant, and, third, a failure or refusal, on his part, to perform the duty thus imposed.

It follows that a party seeking the benefit of this remedy must assume, as the basis of his application, the existence of the elements we have thus stated, to-wit: a right in himself, a duty imposed, and a failure or refusal on the part of the one having the duty to perform to do that which he ought by law

to do, a proper state of facts being presented to him demanding such action.

The question in this case is whether the relator, on the facts found in this record, has shown his right, the duty on the part of respondents, and a failure or refusal on their part to perform that duty.

We need scarcely add the well-known qualification of the rule, that the duty to be performed must in general, if not in all cases, be of a ministerial, and not of a judicial character.

We may assume as a necessary predicate for the action of a court under our system, in every case, that the party seeking such action must allege in his pleading a state of facts from which the relief sought would follow, and then must prove such allegations as he makes by competent and sufficient testimony. The question is, has this been done in this case? If so, then the proper relief must be given; if not, then it cannot be demanded.

By the act of 1872, ch. 5, secs. 1 to 4, the duties of judges of elections, sheriffs and inspectors are prescribed as follows:

1st. It shall be the duty of the judges of elections in each county in this State, in case of the election of Senators and Representatives, within ten days after said election, to cause one copy or set of said "polls, books or lists to be filed with the clerk of the circuit court, and another with the clerk of the county court of the county in which the election was held, and also to furnish the sheriff of said county with a copy properly certified."

By sec. 2: In counties which singly elect a Representative, and in those which singly elect two or more Representatives, the polls shall be *compared* at the court-house in said counties; and in all Senatorial and Representative districts, it shall be the duty of the sheriff of each county, within ten days after said election, to certify and forward to the Secretary of State one *copy* or *set* of *said books.*

By sec. 3: The Governor and Secretary of State are hereby constituted a board of inspectors, whose duty it shall be to *compare* the vote for Senators and Representatives, in the several senatorial and representative districts of this State, and declare the result and then, by the 4th section, when the result of such election shall have been ascertained and announced, the Governor shall issue certificates of election to the persons receiving the largest number of votes in said district, which certificate shall be *prima facie* evidence of such election; and the sheriffs of the several counties singly electing one or more Representatives shall issue certificates of election to the persons receiving the largest number of votes cast at said election.

It is seen from the reading of this statute, that it cannot be clearly understood without reference to other statutes; for, what is meant by causing "one copy or set of said books or lists to be filed," as required by the first section, is not explained by the language used—nor the language "and also to furnish the sheriff of said county with a copy properly certified." By section 859 of the Code, it is provided, as one of the regulations governing the conduct of elections,

that " when the officer receives the ballot. he shall call the name of the voter, in a distinct voice, and the clerks of the election shall take down, on separate lists or books, the names of any person voting, and shall attest the correctness of them under their hands.

By sec. 861 : When the election is finished, the returning officer is to open the box and read aloud the names of the persons which shall appear in each ballot, and the clerks at the same time shall number the ballots, each clerk separately ; and then, by sec. 871, it is provided, " The officer or person holding the election, within ten days after the election, shall, at the request of any person elected to serve in the General Assembly, or other person in his behalf, cause fair copies of the list of votes, and of the number of ballots for each candidate, to be made out and delivered to the person requesting the same, or to his order, which list and numbers shall be signed by the returning officer."

By sec. 869, it is provided said books, lists, or copies of them, certified by the clerk having custody of them, shall be records and be received as evidence in any case arising out of said election, subject to be impeached, however, by other evidence—a previous section having provided for their deposit, or copies of them, with the clerks of the circuit and county courts.

From these provisions; we see that the law contemplated a list of the voters and also the number of the ballots for each candidate should be thus preserved, as records, in the proper place of deposit, and

these constitute what is known as the poll books or lists, which are referred to in the act of 1872, which we have quoted. Now, I take it, the plain meaning of all this is, that the inspectors, who are to compare the votes, ascertain the result and give the candidate a certificate of his election, are to have copies of these documents forwarded to them, and with these copies before them, duly authenticated, they are to perform the duty assigned them. If this is not the meaning and purpose of the statutes cited, then the English language cannot convey the meaning of a Legislature. In fact, I do not understand the majority opinion to controvert this view of the requirements of law of our State.

It is said in argument that these requirements have been habitually disregarded, but this can make no difference to us as a court in ascertaining what the law is. It only furnishes an urgent reason why the law should be enforced by the courts, that it may be respected in the future. Violations of law or failure to comply with its demands, cannot abrogate it.

The requirement of the statute being, that "in all Senatorial and Representative districts, it shall be the duty of the sheriff of each county, within ten days after said election, to *certify* and forward to the Secretary of State *one copy* of said books, which, as I construe the law, includes poll book or list, as well as the state of the vote for the respective candidates voted for; and in a previous section it is provided, copies of all these shall be furnished to the sheriff in order that he may comply with the requirements cited.

3—VOL. 6.

When these copies, duly certified, are received by the Secretary, it is the duty of the Governor and Secretary to compare the vote, ascertain and declare the result, and then issue the certificate of election to the parties shown to be entitled, but on no other evidence can this be done, except as required above.

There are other provisions of law which authorize sending for the returns in case of failure of the sheriff, which, I think, furnish abundant means to enable the inspectors to perform the duty assigned them. In fact, if no specific provision existed, it would probably be equally their duty to procure them, in order that they might perform an important official duty imposed on them by law.

But in addition to this, by section 871 of the Code, on demand of a party interested, it is made the duty of the sheriffs to furnish duly certified copies of the list of votes, and the number of ballots for each candidate; so that the relator had it in his power to supply the proper legal evidence of his election, and on this to base his demand for the certificate authorized to be issued, if he was legally entitled to it.

It is argued that it would be inconvenient to send the poll books or lists and returns, and thus comply with the law. Such an argument may well be made to the Legislature on the question of a change of the law, but has no force when presented to a court sworn to enforce and carry out the mandate of the law-making power, whose duty it is, not to make, but construe the law.

It is said there could be no need for the poll

books or list of votes. That is not for us or any-one else to say. It is enough the Legislature has so commanded; it is the law, and should be obeyed. We must assume there was a reason for the require-ment.

We can well see how this requirment may serve as an important check on mistake or fraud on the part of judges and clerks of election. The list of voters, numbered as required by the statute, will show pre-cisely the number of votes cast. If any discrepancy should appear between the number of votes cast and the number reported as received by any candidate, this furnishes the ready means of detection.

Suppose, for instance, the poll books show only one thousand votes cast in the county, but the returns of the number of votes given to two candidates should show that one had received seven hundred votes and his opponent say eight hundred and fifty, thus giving him six hundred and fifty more votes than were voted. Suppose, in looking over and comparing the returns, it should be found that in two precincts this candidate is credited with having received three hundred and twenty-five in each more than the lists showed had voted. The fraud or mistake would at once be de-tected, and the duty of the inspectors would be clear to discard the excessive votes thus detected, and give the certificate of election to the other candidate re-ceiving the eight hundred votes. Such cases might well occur and may well have been guarded against by the Legislature. Without such a check the re-turning officers may, by mistake or fraud, elect any

candidate, and the officers whose duty it is to declare the result have no means of correcting the error or detecting the fraud. These are not the times to relax our vigilance or, by construction, to lessen the safeguards thrown around the safety and purity of the ballot-box.

Whether the reasons given for the law are sound or not, it is enough for me to know it is so written, and then my duty is plain to enforce it—a duty which I cannot hesitate to perform.

That it was contemplated that this comparison should be made between the poll list and the number of votes reported in favor of each candidate, is evident by the requirement that this list shall be sent to the sheriffs, and then, in the case before us, he shall send a duly certified copy of it to the Secretary of State. No other conceivable reason can be given why the lists of votes should be sent at all. If they are only to compare the number of votes received, then they only needed the statement of the votes given for each candidate, and their work was one simply of addition and subtraction.

We now look at the transcripts from the Secretary of State's office, made part of the petition, and admitted to be correct, to see whether they furnish the legal basis on which these inspectors were called on to act, and upon which they could have rightfully performed the assumed duty of issuing a certificate of election to the relator. If not, we take it, other things out of the way, it follows he has not been wronged; or, if wronged, the inspectors have not done

that wrong.   In fact, if, without this evidence, as required by law, they had issued such certificate, they would have but added another instance to the neglects and failures, in disregard of the law, which the learned counsel in argument tells us has been the practice since the passage of the act of 1872.

The documents referred to are substantially as follows:

The sheriff of Polk county certifies that at an election, held on the 2d of November, 1880, for electors for President and Vice President, for Governor, members of Congress, State Senator for the sixth senatorial district, and joint Representative for the counties of Polk and Bradley, the following is a correct report of said votes polled, as *appears* from the certificates from the judges and inspectors of the several civil districts of said counties, to-wit:

The Democratic electors for Hancock and English, headed by John L. T. Sneed, received 653 votes each.   He then gives the number of votes received by the Republican ticket, headed by George Maney, and so on with the other candidates until he reaches the case of joint Representative.   He says, as to this, James G. Stewart received for joint Representative of Polk and Bradley, 570; W. T. Foute received for joint Representative of Polk and Bradley, 425 legal votes and one illegal vote, as appears from the certificate of the judges and inspectors and clerks holding the election in the second civil district of Polk county. Signed by J. C. Hannah, sheriff of Polk county.

The returns made by the sheriff of Bradley are

nearer a compliance with the law, that is, he sends a copy of the returns, showing the number of votes. given for each candidate, tabulated so as to enable the. inspectors to sum up the result, so far as the enumeration is concerned, and he certifies this to be "the full official vote of said county, as shown by the official returns from all the districts of said county, now on file at the office of clerk of the circuit and county courts." But it is not a copy as required by law.

But there is no copy of the poll books, or list of votes cast, as required, nor could the inspectors by any possibility perform the duties assigned them by law from these documents. Their first duty is to. "compare the votes." What was there to compare this return with? So far as the actual numbers of votes cast is concerned, there was nothing by which a comparison in this respect could be instituted. There must be the other document required by the statute, that is, the poll book or list of voters, and then the number of votes cast could be ascertained, and then this be compared with the number stated or shown to have been received by each candidate, and thus *it* would be seen whether the two corresponded on comparison of the number of votes shown by each. Until these copies were before them, they were not authorized to declare the result, for such is the imperative language of the statute. When it was done, then the next step was to add the number of votes for each candidate, see the result, and see which had the majority, and then issue the certificate to the. party having the largest number of votes.

The State *ex rel. v.* Board of Inspectors.

If these inspectors could issue a certificate without the poll books or lists as required by law, they can do so on any evidence they may choose arbitrarily to adopt. They could, as I think, as well have been called upon to issue a certificate on the statement of the vote as found in the newspapers as on the statement found in the record from Polk county. It does not purport to be a copy either of the "poll book or lists," or of the returns, but only shows what the sheriff says they contain, or the result he has reached from the returns made to him. It may be correct, but the inspectors have no means of verifying its correctness. They have no legal evidence on which they are authorized to act. How could the inspectors, from this, "compare the votes"? No law, of which we have any knowledge, authorizes them to act on such a certified statement from a sheriff.

He also certifies that Foute received 425 legal votes and one illegal vote, as appears from the certificate of the judges, inspectors and clerks holding the election in the second civil district of Polk county.

By what authority his statement of the fact that this illegal vote appears to have been received is made evidence to anybody, we are unable to conceive, and have had no rule of law, statute, or otherwise, referred to, nor do we know of any by which such a statement serves to substantiate the fact thus stated. Until this is done, it must be held no more than the statement of any other unauthorized party, and of no legal validity whatever.

But it is said the "inspectors have in their answer

admitted the correctness of the certified copies of the
returns." They have admitted, in the language be-
fore quoted, "that the certified copies of the returns
of Polk and Bradley are correct." This can only be
their opinion; they had no means of testing its cor-
rectness. But we cannot see that this affects the
question before us. Admit they are correct, either as
copies or that they state the result of the vote cor-
rectly, still they could not admit that these copies
furnished the legal basis on which they either could
or ought to have acted; or, if they concede, did so
admit, the papers themselves show the contrary. They
are correct in any sense you can conceive, and give
them all the force such concession may involve, and
then they are worthless as the basis of the action
sought to be compelled by this proceeding. Concede
that the inspectors had undertaken to act on these
documents, and had disagreed as to what that action
should be, and therefore refused to issue a certificate,
and it only amounts to this, that they proposed to
act without authority of and in violation of law, and
failed to agree upon what should be done. This is
all that can be predicated of their statement—no more,
no less. Suppose they had answered that they had
a statement from the chairman of the county court of
Polk county before them, which they believed was a
correct one, as to the number of votes cast for each
candidate at the election, and also of the fact that
there was one illegal vote stated to have been given,
and on this statement one believed a certificate should
have been given to the relator, and the other not,

would it not be conceded at once that they ought not to have issued a certificate on this, however correct they may have deemed it? Why? Simply because it is not what the law authorized or required them to act on; and if they had acted on this evidence, they would have acted in violation of the law under which they were alone authorized to act at all. If this be true, what element of legal difference can there be between one unauthorized statement and another—one made by a chairman of a county court, and one made by a sheriff? We are unable to see any difference, and think each is equally worthless as the basis for official action. To have acted on this return by the sheriff, would have been illegal action; to refuse or fail to act on it, can be no legal wrong to the relator or any one else, and if so, then he presents to this court no case of legal wrong done him, consequently is entitled to no legal remedy. In fact, to enforce action on these facts by the inspectors, would be to compel them, by the judgment of this court, to violate instead of perform a legal duty. The writ of mandamus, under the principles cited above, lies only to enforce the performance of a legal duty. On these documents no legal duty arose, and on the case made by the relator himself none could have been performed; therefore, no such action can legally be compelled. A mandate to violate the law would be an anomaly in the action of any court— one that we think no court can rightfully make or properly enforce.

It is argued that it may be inferred that the poll

lists or books were in the Secretary's office, and be-
fore the inspectors. We need but say, that the pe-
tition and transcripts made exhibits fairly rebut this;
for, if such documents had been there, they would
have certainly been produced. In the next place, it
was conceded in argument frankly by the learned
counsel that these documents were not on file, and
that the practice had never been to file them.

But admit this inference, the case is not helped.
The more important document is a certified copy of
the return of votes cast for each candidate. The
only evidence tendered, and, by fair implication, the
only evidence in existence of this, is the transcripts
exhibited with the petition. These, as we have shown,
do not purport to be copies of the poll books or re-
turns, but only the sheriff's statement of result of his
inspection of them, which may or may not be correct.
But for the purposes of the inspectors, this statement
is of no more validity than the report taken from a
newspaper. When any law can be shown in our
State which makes such a statement equivalent to a
certified copy of a record, then I shall promptly yield
the point, but not till then, and opine that no such
law will ever be found. I may add, that the logic
which goes on the idea that a state of facts may ex-
ist because not shown, and makes the absence of proof
the basis of adjudication, is not and cannot be sound.
The case made by the relator is what we are called
on to adjudge, not one that may by possibility exist.
That case as made is based on the transcripts made
exhibits to the petition. On that case I base my

judgment—not on what may possibly exist, but which does not appear in the records.

For these reasons, I think the circuit judge properly refused to grant the relief sought and dismised the petition. The right to the action of the court to enforce the issuance of the certificate, not only does not appear from the case made by complainants, but, on the contrary, the issuance of such a certificate would have been illegal and improper; therefore, the respondents have not failed or refused to perform a legal duty imposed on them, and the basis of the complaint of the relator fails, and he is not entitled to the remedy sought.

The fact that the respondents have given a wrong reason for their action, or a reason that was insufficient, does not change the result. The question is, not what were their views as to the action to be taken by them, but what was their legal duty. If this did not exist, it makes no difference whether they failed to issue the certificate for one cause or another. The real question is, ought they to have issued it at all for any reason on the documents before them? I think no one could seriously maintain, with the law before him, that they ought; and if not, then they cannot be compelled to do what by law they were forbidden to have done.

It may be said the respondents have not specifically interposed as a defense the fact of the insufficiency of the returns. This is true. They have simply admitted the facts, as stated and shown by the relator, given the point of difference between them-

selves, and then submitted the whole case to the judg-ment of the court. This leaves us to adjudge upon the case made in the record, whether they have failed to perform a legal duty, for that is the affirmative ground on which the relator stands. In support of his claim, he tenders the evidence himself of his right in the form of these certified transcripts from the Secretary of State's office, and ' this is the sole evi-dence presented by him. If it is insufficient, then his case is not made out on his own showing, and he must fail of the relief sought by him.

In conclusion, I think proper to add, that the failure of the relator to have the proper evidence or documents before the inspectors on which he could have legally demanded the action of the inspectors, is the result of his own laches. By sec. 871 of the Code, before cited, he had the right to demand copies of the lists of votes, and the number of ballots for each candidate, certified by the returning officer, and he could have presented these documents, required by law, and had such action as was proper upon them, and thus had the legal evidence of his right before the court. This, possibly, he may do yet; but until it is done, and the action of the board invoked on a legal state of facts, they cannot be compelled to action on that which the law does not authorize, but, by prescribing certain evidence, has fairly forbidden action on any other. For these reasons I think the judgment of the circuit court should be affirmed.

It is proper to say, that on the main question, about which the Governor and Secretary of State dif-

fered, if the proper evidence had been before them on which they could have acted, I should agree with the conclusion reached by my brother Cooper, on the principle that every presumption is in favor of the regularity of the action of a public officer, where by law he has the power to act at all, and error must be shown, but cannot be presumed or inferred.