**Jack R. MAHAFFY and Helen M. Mahaffy, d/b/a Mahaffy Auto Parts, Appellants,**

v.

**CITY OF WOODSON TERRACE and Rodney O'Donnell, Respondents.**

No. 41260.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 18, 1980.

---

Edwin Rader, Clayton, for appellants.

John Gray, Clayton, W. Munro Roberts, St. Louis, for respondents.

REINHARD, Judge.

Defendant city appeals from an order of the trial court directing the city to remove a certain street barricade and assessing damages against the city in the amount of one dollar. Plaintiffs appeal from that portion of the order granting them damages of only one dollar against the city and denying damages against defendant O'Donnell.

Plaintiffs own and operate an auto parts business in the extreme northwestern corner of the Village of Schuermann Heights. On the south and east sides of plaintiffs' property run, respectively, the paved street of Chester Avenue and a gravel alley called Calvert Street which intersects with Chester; both streets are located in Schuermann Heights. On the north and west sides run, respectively, a twenty foot wide strip of land and the paved street of Edmundson Avenue; both of these are located in the City of Woodson Terrace.

The dispute in this case centers upon the twenty foot strip or alley to the north of plaintiffs' property. Defendant city admits that this strip is a public street of Woodson

Terrace. Plaintiff Jack Mahaffy testified that plaintiffs had been using the portion of the strip just off Edmundson Avenue for over twenty years in receiving deliveries at the north door of their business, and that they have paved this area and built a loading dock there. Mr. Mahaffy also testified that a Mr. Schraer, whose lot lay directly north of plaintiffs' business, had begun using this area even earlier, as a means of reaching his garage.[1]

While the strip runs the full length of plaintiffs' property approximately 120 feet according to plaintiffs, only the small area near Edmundson Avenue had been improved. East of this improved area the strip was described as rocky, overgrown with brush, full of holes, and too rough for plaintiffs to mow with a tractor. Along the north part of the strip ran an open drainage ditch of irregular depth and width which emptied at its west end into a storm sewer running under Edmundson Avenue. Plaintiff Jack Mahaffy described the strip in general as "just an overgrown drainage ditch...."

In the fall of 1976, plaintiffs obtained from Schuermann Heights a building permit for a garage addition on the east side of their existing building. The north side of the addition was to abut the twenty foot strip, while the east side would abut the gravelled alley (Calvert Street). Plaintiffs admit that thereafter they began to extend the twenty–four inch storm sewer running under Edmundson Avenue by laying sections of the same size pipe, each seven and one–half feet long, in the drainage ditch. They also admit that their object was to put in seven such sections of pipe, cover the drainage ditch, and construct a road in the twenty foot strip so that they might have access from Edmundson Avenue to the north side of their new addition. Plaintiff Jack Mahaffy testified that plaintiffs had wanted to open an automotive engine installing facility in the addition; the transportation of the vehicles, engines, and relat-

---

1. Mr. Schraer had operated an automobile repair business in the garage behind his house, but the business ceased operating upon his death, several years before this suit was initiated. His widow still lived in their house and testified at the trial on behalf of the city.

ed parts would have necessitated vehicular access to the addition.

Plaintiffs admitted that they never obtained or attempted to obtain permits from the City of Woodson Terrace or from the Metropolitan St. Louis Sewer District (MSD) authorizing them to enter the body of the public street and install a new storm sewer. In late October or early November of 1976, officers of the city ordered plaintiffs to cease their construction work in the strip because no permits for the work had been obtained. Testimony at trial indicated that at this time either two, three or four of the seven sewer pipe sections had been installed. Although work on the storm sewer was halted, plaintiffs proceeded to erect their garage addition without hindrance.[2]

Sometime in December of 1976, persons living to the north of plaintiffs' business complained to defendant O'Donnell, the city's Building Inspector, that plaintiffs had resumed work on the ditch and alley. Although the testimony was conflicting as to whether more work had been done on the storm sewer when O'Donnell arrived and ordered work in the alley stopped again, both parties acknowledged that only one pipe was left uninstalled. Shortly thereafter, employees of defendant city erected two barricades, the first at the Edmundson Avenue entrance to the twenty foot strip and the second where Calvert Street intersected the strip. These two barricades blocked vehicles from entering either end of the twenty foot strip, and prevented plaintiffs from proceeding with their project of installing the storm sewer and building a roadway to their new addition. Plaintiffs also lost their vehicular access to the north door of their main building. At its next meeting, the city's Board of Aldermen ratified this action through a resolution.[3]

Plaintiffs then brought suit in two counts, seeking in Count I to enjoin the city from obstructing their use of the twenty foot strip. In Count II, plaintiffs sought actual damages against the city, and actual and punitive damages against defendant O'Donnell. At the conclusion of the case, the trial judge entered judgment for plaintiffs and against the city on both counts, ordered the city to remove the barricade on the west end of the strip, and awarded plaintiffs damages in the amount of one dollar. Judgment was entered in favor of O'Donnell as to the claim against him.

■ On appeal, defendant city contends that the trial court erred in two respects in granting judgment for plaintiffs. The city argues first that its action in barricading the strip was a proper exercise of its police power, necessary to protect the public; the city further contends that plaintiffs were barred from obtaining equitable relief because they had "unclean hands." Plaintiffs contend that the court erred in not awarding them substantial damages against the

---

**2.** The building was constructed with an overhead garage door on its north side, opening onto the twenty foot strip, and a standard hinged door on its east side, opening onto Calvert Street. There was some dispute at trial over whether or not plaintiffs had originally planned to put a garage door in the Calvert Street side of the addition, the side to which plaintiffs still had vehicular access.

**3.** The resolution stated:

WHEREAS, the twenty foot wide road dedicated to public use adjoining Block 6 of Lambert Terrace Subdivision has not been opened and improved for vehicular traffic by the City of Woodson Terrace; and

WHEREAS, it is not deemed to be feasible or in the best interests of the City to open and improve such road at this time because of serious drainage water problems and the potentially greater damage to the adjoining property owners and the adjoining public streets from diversion of water in the event the existing drainage ditch is closed or modified or the roadway paved without adequate provision for storm water drainage; and

WHEREAS, use of such roadway for vehicular purposes without proper improvements would constitute a danger to the health and safety of the public;

NOW THEREFORE, BE IT RESOLVED by the Board of Aldermen of the City of Woodson Terrace, St. Louis County, Missouri, as follows: That barricades shall be maintained across the 20 foot wide road between Edmundson Lane and Calvert Avenue at the rear of the Lots fronting on Kathlyn Drive in Block 6 of Lambert Terrace Subdivision within the City of Woodson Terrace to prevent and prohibit the use of such road by vehicular traffic.

Adopted this 6th day of January, 1977.

city and O'Donnell; however, in the argument portion of their brief, plaintiffs fail to refer to the alleged error as to O'Donnell, and we therefore deem the portion of the appeal pertaining to O'Donnell abandoned.

It is agreed by the parties that Woodson Terrace is a city of the fourth class. The city therefore has been specifically granted certain authority over its streets by the Legislature. Section 79.410, RSMo 1978, provides in part that:

The Board of Aldermen may prohibit and prevent all encroachments into and upon sidewalks, streets, avenues, alleys and all other public places of the city, ... and making of excavations through and under the sidewalks or in any public street, avenue, alley or other public place within the city. They may prevent ... all ... practices ... therein likely to result in damage to any person or property and to regulate, prevent and punish for the riding, driving, ... any vehicle over or upon or across or along any sidewalk, street, avenue or alley of the city.

Section 88.670, RSMo 1978, more broadly states that "[c]ities of the fourth class shall exercise exclusive control over all streets, alleys, avenues and highways within the limits of such city." Also, section 304.120.-2(1), RSMo 1978, provides that municipalities may "[m]ake additional rules of the road or traffic regulations to meet their needs...."

It has accordingly been held that a city may properly exercise its police powers to make such additional traffic regulations as are necessary to protect the safety of the public, even to the extent of restricting the use of certain streets with permanent barricades. *Jones v. City of Jennings*, 595 S.W.2d 1 (Mo.App.1979).[4] Similarly, a city may also use its police powers to regulate and restrict work in the city streets, since otherwise there would be a private "power turned loose in the streets inconsistent with the particular sovereign power delegated by the state to the city, and liable to be de-

structive of the public safety." *City of Westport v. Mulholland*, 159 Mo. 86, 97, 60 S.W. 77, 79 (banc 1900).

Like other forms of police regulations, however, these traffic and street regulations must be reasonable. *Id. See also, City of Carthage v. Garner*, 209 Mo. 688, 108 S.W. 521 (1908). Thus, a member of the public "sometimes has the right to dig up the street,—for example if it be necessary to connect or repair a broken connection with a water main, a gas main, a sewer...." *City of Westport v. Mulholland*, 159 Mo. 86, 97, 60 S.W. 77, 79 (banc 1900). While the city could not arbitrarily and completely refuse permission for such necessary work, the member of the public, however, "must comply with the reasonable regulations, and obtain permission, and do the work as the ordinance requires." *Id.*

It is necessary to examine the circumstances surrounding the city's action in this case, since they bear upon the reasonability of the action. Here, the evidence showed that the "street" in question had never been improved, was not used as a thoroughfare, and was in fact virtually impassable and hazardous to vehicular traffic. The evidence also showed that plaintiffs had begun construction work without even attempting to obtain permission to do so, that their object was to cover the drainage ditch and pave the strip, and that they had not considered what effect this project might have upon adjoining landowners or the general public. The evidence further showed that they had other means of ingress and egress to their property. In addition, it appears that the city was concerned about the drainage problems threatened by plaintiffs' unauthorized project, about the likelihood that plaintiffs' work would not meet standards for the city streets, and about the hazards posed to members of the public who might attempt to use the strip in its present condition. While it has been held in a matter not relating to traffic control, that a city cannot place a perma-

4. The trial court did not have the benefit of the *Jones* case, which was handed down after the judgment in the case at hand.

nent obstruction in a public street, *City of Poplar Bluff v. Knox*, 410 S.W.2d 100 (Mo. App.1966), a city may lawfully authorize the temporary closing of a public street for a reasonable purpose, *Titone v. Teis Const. Co.*, 426 S.W.2d 665 (Mo.App.1968). Here, although the city obviously had other remedies available to it, we cannot say that the action it chose was an unreasonable exercise of its police power.

We do note that if, as plaintiffs contend, the city's intention was to permanently abandon the street, then the remedies it employed were not proper. In order to vacate a street, the city must use the process provided for by section 88.673, RSMo 1978. We find nothing in the record to show any intent on the part of the city to permanently vacate the street.

In any event, we believe that plaintiffs were barred by the clean hands doctrine from obtaining relief in this case. It is well settled that a court of equity will not aid a plaintiff who comes into court with unclean hands. *Moore v. Carter*, 201 S.W.2d 923, 929 (Mo.1947). Thus, one who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct. *Id.* Here, it appears that plaintiffs sought to develop the public street for their own use without regard for the effect of this action on the public health and safety; that they undertook work in the public street without seeking the permits from the city or the MSD which city and MSD ordinances required; and that they did not seek such permits even after being informed that these were necessary. Thus, the action of the city, upon which plaintiffs' claim is based, was precipitated by plaintiffs' own illegal action of engaging in their work in the street without the permits required by the ordinances. The plaintiffs therefore came into court with unclean hands and were not entitled to the relief they sought. *See, Keller v. Devine*, 550 S.W.2d 634 (Mo.App.1977).

Thus, we conclude that the trial court erred in granting plaintiffs injunctive relief and damages against the city. This result disposes of plaintiffs' contention that the trial court erred in not awarding them substantial damages. We have also determined that plaintiffs have abandoned their appeal as to defendant O'Donnell.

Judgment against defendant city reversed. Judgment in favor of defendant O'Donnell affirmed.

CRIST, P. J., and SNYDER, J., concur.