# CITY OF CARTHAGE v. R. W. GARNER and JOE LAWSON, Appellants.

### Division One, February 26, 1908.

1. **TELEPHONE POLES IN STREET: No Application: Discretion of Clerk.** A city of the third class has the right to require a telephone company, holding a franchise from it to construct and operate telephone lines in the city, to apply to the city clerk for permission to dig an excavation in the sidewalk for the purpose of replacing an existing pole with a new one, and the company's servants may be punished for making said excavation and erecting said new pole without such permission and without having made such application. The clerk cannot arbitrarily deny said application, and if he does his arbitrary action can be corrected by proper authority. Hence, the city does not delegate to the clerk legislative authority, or unregulated official authority.

2. ———: ———: **Unreasonable.** The ordinance requiring a telephone company to make written application to the clerk for permission to erect its poles in a public street, is not unreasonable.

3. ———: ———: **Contract With State: New Burdens.** A public service corporation must exercise its charter and franchise rights subject to such reasonable police regulations as may be prescribed by the city. And such regulation ordinances are not violative of the contract betwen the company and the State—its charter—because they impose upon the company duties not detailed in the general statutes. A statute which expressly gave a city the power to regulate the setting of telephone poles, applies to the original and subsequent setting, and became a part of the contract between the company and the State; and aside from that, such ordinance regulations are but the exercise of the inherent police power of the city.

4. ———: ———: **Police Regulation: Surrender.** No city, by its charter, or by any contract it may enter into with a public service corporation, can abrogate or abridge its police powers, and if it did, to that extent such instruments would be void.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellants.

(1)   The control of the highways and streets is primarily in the State and the State acting in its sovereign capacity may grant the right to use the streets and public highways in its discretion.   Railroad v. St. Louis, 3 Mo. App. 320, 66 Mo. 256; Hisey v. Mexico, 61 Mo. App. 252; Keasby on Elec. Wires, sec. 3; Booth on St. Rys., pp. 107, 108; Elliott on Roads and Streets, pp. 327-332-698; 2 Dill. Mun. Corp., secs. 657-683.   (2) Cities derive their powers from the Legislature and have no power or authority except such as is granted to them by legislative act.   St. Louis v. Laughlin, 49 Mo. 363; City of Kansas v. Swope, 79 Mo. 446; St. Louis v. Tel. Co., 96 Mo. 623; Nevada to use v. Eddy, 123 Mo. 546; Town of Clinton v. Clayton, 50 Mo. App. 535.   (3)   Section 1251, Revised Statutes 1899, has been held to confer on telephone companies the powers and privileges therein granted.   St. Louis v. Tel. Co., 96 Mo. 623; State ex rel. v. St. Louis, 145 Mo. 570; State ex rel. v. Flad, 23 Mo. App. 185; Hannibal v. Tel. Co., 31 Mo. App. 23; Tel. Co. v. Benton Harbor, 121 Mich. 512; Tel. Co. v. St. Joseph, 121 Mich. 502; Tel. Co. v. Oshkosh, 62 Wis. 32; Tel. Co. v. Board, 67 Iowa 250; People v. Tel. Co., 31 Hun 596; Tel. Co. v. Harrison, 31 N. J. Eq. 627.   (4)   The Home Telephone Company having incorporated under article 6, chapter 12, Revised Statutes 1899, in August, 1902, the provisions of that article as it stood at that time became the charter of said company, and became and was a contract between the State of Missouri and the Home Telephone Company, and when accepted and acted upon by the company became irrevocable and neither the State nor the city could set it aside or interpolate new and more onerous conditions.   Matthews v. Railroad, 121 Mo. 310; State ex rel. v. St. Louis, 145 Mo. 591; O'Brien v. Cummings, 13 Mo. App. 197; People v.

Trust Co., 130 Ill. 266; North Point Consol. Inc. Co. v. Canal Co., 16 Utah 246; Tel. Co. v. St. Joseph, 121 Mich. 502; Tel. Co. v. Benton Harbor, 121 Mich. 512; New Orleans v. Tel. Co., 40 La. Ann. 45; McQuillin, Mun. Ord., secs. 197-201, 238; 10 Cyc. 222. (5) The only right granted to the city to control and regulate telephone companies prior to 1903, was given by section 1260, Revised Statutes 1899. And the city, in compliance with said section, by chapter 20, sections 599, 601 and 602 of the Revised Ordinances of 1901, made regulations for telephone and telegraph companies following the authority of said statute. The agreed statement of facts shows that defendants as agents and servants were acting in compliance with the regulations provided in said section 1260 and said sections 599, 601 and 602 of the ordinances of the city. (6) The ordinance under which defendants were convicted was passed in 1901, prior to the amendment of section 1251, Revised Statutes 1899, by Act of 1903. At that time the city could only regulate a telephone company incorporated under article 6, chapter 12, Revised Statutes 1899, in three particulars, to-wit: First, the place where the piers, posts and abutments shall be located; second, the kind of posts that shall be used; third, the height at which wires shall be run. R. S. 1899, sec. 1260; State ex rel. v. Flad, 23 Mo. App. 185; Hannibal v. Tel. Co., 31 Mo. App. 23; St. Louis v. Tel. Co., 96 Mo. 629. The only other authority given the city is in section 5837, Revised Statutes 1899, being charter of cities of the third class, which provides that "the council may also regulate the . . erecting of . . telephone, telegraph and electric light poles and the making of excavations through and under the sidewalks or in any street, avenue, alley or other public place in the city." These two sections can stand together without being in conflict, and the city council so believed when sections 599, 601 and 602 of the ordinances

of 1901 were passed, which sections regulate the erec-
tion of telephone poles in strict compliance with section
1260 and also in compliance with section 5837.    (7)
Sections 599, 601 and 602 specially give the Home Tel-
ephone Company the right to set its poles under regu-
lations therein prescribed, and give it authority to do
just what its employees were arrested and convicted
for doing.   Sections 553 and 554 were evidently never
intended by the council to apply to telephone compa-
nies, and should be so construed by the court under the
well-known rule that where two statutes are in appar-
ent conflict, they should be so construed as to uphold
both if possible.   Said ordinances being *in pari ma-
teria* must be construed together, and a fair construc-
tion of the two together excludes telephone companies
from the requirements of sections 553 and 554.   Lang
v. Callaway, 68 Mo. App. 393; State ex rel. v. Spencer,
164 Mo. 48; State ex rel. v. Hancock, 164 Mo. 55; Don-
nell v. Lee, 101 Mo. App. 191.   A special law is not to
be regarded as repealed by a general law, unless nega-
tive words are used or the provisions are plainly in-
compatible.   State v. Daly, 49 Mo. App. 184; State ex
rel. v. Frazier, 98 Mo. 426; Railroad v. Cudmore, 103
Mo. 634; Railroad v. Hambaugh, 106 Mo. 656.   Sections
599-601 and 602 are special ordinances applying to
telephone companies alone, while sections 553 and 554
are general ordinances, and there is nothing to show
which was passed first.

*J. D. Harris* for respondent.

(1)   The city of Carthage, being a city of the third
class, has the police powers to "regulate the erecting
of telephone, telegraph and electric light poles, and the
making of excavations through and under the side-
walks or in any public street, avenue, alley or other
public place within the city."   R. S. 1899, secs. 5837,
5834.   (2)   That the provisions of sections 553 and 554

of the ordinance are police regulations there can, under the authorities, be no doubt. City of Westport v. Mulholland, 84 Mo. App. 319, 159 Mo. 97. And that the city of Carthage has power to enact the same is equally clear. City of Westport v. Mulholland, 84 Mo. App. 319, 159 Mo. 86; R. S. 1899, secs. 5837, 5834; State ex rel. v. Murphy, 130 Mo. 10. (3) Franchise ordinance No. 317 does not attempt to relieve the American Electric Telephone Company or its successor, the Home Telephone Company, from the provisions of said sections 553 and 554 of the ordinance set out in the stipulation of facts. And, even if it did, its provisions attempting so to relieve the telephone company would be invalid, since the provisions of said sections are police regulations. Railroad v. Milwaukee, 97 Wis. 422; City of Westport v. Mulholland, 159 Mo. 94; Beer Company v. Massachusetts, 97 U. S. 33; Railroad v. Gill, 156 U. S. 657. The city cannot contract away its police power. State ex rel. v. Murphy, 130 Mo. 23; City of Westport v. Mulholland, 159 Mo. 94; State ex rel. v. Murphy, 134 Mo. 575; Railroad v. Gill, 156 U. S. 657; Stone v. Mississippi, 101 U. S. 817; Dillon, Mun. Corp. (4 Ed.), sec. 141. (4) That the city may require the telephone company to take out a permit before digging in its streets, and that the regulation requiring such permit is reasonable, has been settled beyond the question of doubt in this State in the case of City of Westport v. Mulholland, 84 Mo. App. 319, and 159 Mo. 86; State ex rel. v. Murphy, 130 Mo. 10; State ex rel. v. Murphy, 134 Mo. 548. (5) Neither are sections 553 and 554 of the Revised Ordinances of the city of Carthage, under which the defendants were convicted, void for the reason that the ordinance delegates the issuing of the permit to the city clerk. Permission could not be refused by him for any purpose or act which the company have a right to perform; since, if permission should be arbitrarily withheld without

good cause, the city clerk could be compelled in the proper tribunal to grant the permit. City of Westport v. Mulholland, 84 Mo. App. 323; State ex rel. v. Murphy, 130 Mo. 10.

GRAVES, J.—This is a prosecution for the violation of an ordinance of the city of Carthage, instituted by proper information of the city attorney before the police judge of said city. Defendants were convicted in the police court and appealed to the circuit court, wherein was had a trial upon an agreed statement of facts, at which trial defendants were again convicted by that court, and this appeal is the result. The case reaches this court by reason of a constitutional question.

The city of Carthage is a city of the third class. In 1895 said city passed an ordinance granting to the American Electric Telephone Company of Kokomo, Indiana, the right to construct, operate and maintain telephone lines and operate a telephone exchange in said city, which said franchise and right was duly accepted by said company. This ordinance is quite lengthy and will not be set out, but such portions as may become necessary will be noted later. The remaining portion of such agreed statement of facts, which, in addition to outside facts, contains sections of different ordinances brought into question, is as follows:

"That said American Electric Telephone Company accepted said ordinance and complied with the terms thereof, and constructed an electric telephone system in the said city and in so doing erected and constructed a telephone line along and on Garrison avenue and Chestnut street in said city, where they cross each other, with the necessary poles, wires, etc., to operate same.

"4. That the Home Telephone Company is a cor-

poration duly incorporated in August, 1902, under article 6, chapter 12 of the Revised Statutes of Missouri, 1899.

"5. That the Home Telephone Company has by purchase and assignment acquired all the rights and liabilities of the American Electric Telephone Company under said ordinance No. 317.

"6. That defendant Garner is superintendent of the Home Telephone Company and defendant Joe Lawson is a foreman of said company in the work of constructing, maintaining and repairing of its telephone lines in said city.

"7. That the revised ordinances of said city for the year 1901 under the title of 'Misdemeanors,' being part of article 6 of chapter 14, are sections 553 and 554, which are in force and effect and are as follows:

" 'Sec. 553. It shall be unlawful for any person to make or cause to be made any excavation in any sidewalk, gutter, street, avenue, alley or public highway in this city without first making application in writing to the city clerk for a permit to do the same. Said application shall be signed by the applicant and shall state the location, character and purpose of said excavation. Upon receipt of the application if the excavation described therein be not such as is expressly prohibited by the ordinances of the city, the clerk shall grant to the applicant a permit to perform said work, which said permit shall designate the time in which said work shall be performed.

" 'Sec. 554. Any person who shall make or cause to be made any excavation in any sidewalk, gutter, street, avenue, alley, or public highway in the city of Carthage without first making application for and obtaining the permit as required by the preceding section, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not less than one dollar nor more than one hundred dollars.'

"8.  That on the —— day of July, 1905, there was standing just inside the curb line of the sidewalk at the northwest corner of Garrison avenue and Chestnut street in said city, a telephone pole of said company, upon which were strung wires of the Home Telephone Company and also of said city.  That said pole had been in said position and in use for a number of years. That by reason of the increase in business and increase in number of wires necessary to be strung thereon said pole had become too small and was too weak to carry· and hold such wires.  And it became and was necessary to replace said pole with a newer and larger pole. And on the day charged in the complaint herein, defendant Garner as superintendent and defendant Lawson as foreman dug and caused to be dug an excavation in the sidewalk at the northwest corner of Garrison avenue and Chestnut street for the purpose of setting said new pole to replace said old pole, without first making an application in writing to the city clerk stating the location, character and purpose of said excavation and obtaining a permit from the city clerk of said · city as required by said section 554.  That said excavation as it was being made was at a location in strict compliance with the terms of said ordinance No. 317 above set out and in compliance with chapter 20 of Revised Ordinances for the year 1901 of said city, which is now in force and effect, the material parts of which, as to this controversy, are as follows:

" 'Sec. 599.  Any telephone or telegraph company doing business or desiring to do business in the city of Carthage duly incorporated  under the provision  of article forty-five, chapter forty-two, of the Revised Statutes of Missouri for the year 1899, is hereby authorized to set its poles, wires and other fixtures along or across and under any of the public streets and alleys of said city subject to the regulations hereinafter provided.

" 'Sec. 601. The poles used, as herein provided, shall be of good sound timber, not less than five inches in diameter at the upper end, straight, shapely, of uniform size, neatly planed or shaved, thoroughly painted, shall be supplied with iron steps, commencing not more than seven feet from the surface of the ground. All wires run upon such poles shall be run at a height of not less than twenty-five feet above the grade of the street.

" 'Sec. 602. Whenever said poles are erected upon any street of said city they shall be placed in all cases when practicable, on the outer edge of the sidewalk just inside of the curbstone, and on the line dividing the buildings one from the other, and in no case to be placed so as to obstruct the drainage of the street or injure or damage in any way the curbstones or other public or private property on the line of the said street or alley where said poles are located.' "

Defendants prayed for a peremptory instruction which was refused and they were adjudged guilty of a violation of sections 553 and 554 of the ordinances as above set out and as charged in the complaint. Their fine was fixed in the sum of one dollar each, and being unsuccessful in their motion for new trial appealed as aforesaid. Points made will be noted in the course of the opinion.

I. It is urged that sections 553 and 554 of the city ordinances, quoted above, and under which the defendants were convicted, are void as to the Home·Telephone Company, for whom defendants were working, and therefore void as to defendants in this case, for four reasons. Of these in their order. The first reason is thus stated in the brief of learned counsel:

"First. It delegates the·issuing of a permit to the unregulated official discretion of the city clerk: 1, as to whether the excavation is prohibited by ordinance; 2, the time in which the work shall be done."

By section 5837, Revised Statutes 1899, which was taken from the Act of 1893, the council had specific authority to regulate the erection of telephone poles, in this language: "The council may also regulate the . . . . erecting of . . . . telephone, telegraph and electric light poles, and the making of excavations through and under the sidewalks or in any street, avenue, alley or other public place within the city."

This section is ample authority to empower the city council to legislate upon the subject. But in addition to that, the subject-matter of these two sections of the ordinance falls within the general police power of the city. The city has control of its streets and it owes to the public a duty to keep them in a reasonably safe condition and thereby avoid injury. If the city fails in this respect it becomes liable for ensuing damages. To our minds the question of the validity of this ordinance under the objection now in hand is fully settled by the case of Westport v. Mulholland, 159 Mo. 86. In that case we said:

"Defendant was convicted and fined in the police court of the city of Westport upon a charge of a violation of a city ordinance of which the first section is: 'No person or persons shall tear up, dig up or otherwise interfere with any of the streets or alleys within the limits of the city of Westport without the permission first obtained from the board of aldermen of said city.' . . . . That the city could not by its ordinance deprive the railroad company of its franchise or impair the obligation of its contract with the county court, treating the grant of the franchise and its acceptance as a contract, is a proposition of law that has not been gainsaid in this country since the decision in the Dartmouth College case in 1819. But that in the exercise of a franchise affecting the safety or wellbeing of the public the grantee is under the control of the police powers of the State is a proposition equally

well settled. The question then is, is the authority of the municipality asserted under that ordinance the impairment of the contract or only a reasonable regulation of its exercise? In construing the ordinance for the purpose of testing its validity under the Constitution we must accord to it a reasonable and lawful purpose, if it is susceptible of such, and must assume that in its exercise a wise discretion will be used by the city officials, either of their own will or under compulsion of the courts.

"It is undoubtedly true that in maintaining and operating its railroad, repairs will be required which will necessitate the digging and tearing up of the street more or less, and the right to do this under reasonable police regulations is implied in the grant of the franchise, and if this ordinance is construed to mean that it is left with the city officers to say, arbitrarily, whether or not the railroad company may tear up the streets to make repairs, it would be equivalent to subjecting the existence of the franchise to the will of the board of aldermen and would be in violation of the Constitution.

"But if it means that when repairs of the railroad become necessary, requiring the tearing up of the street, and rendering it for the time being unsafe or inconvenient for travel, the railroad people must, before doing so, report to the city authorities and proceed in the matter under such reasonable police restrictions as they may prescribe, then it impairs no contract, and violates no provision of the Constitution, and we may add, that if that is what it means, the courts will hold the city to it, if it should attempt to use it to impair the railroad company's rights. . . . The briefs of counsel are rich with learning on this subject, but we have quoted sufficient to show the state of the law and to guide us to a conclusion in this case. The ordinance in question is clearly a police regula-

tion to protect the streets of the city. . . . . The
city is charged with the duty of preserving its streets
in a reasonably safe condition for the public use; the
lives of its inhabitants and the safety of their property
demands the performance of that duty, and the city
could not divest itself of it if it desired to do so. If we
say that the railroad company has a right to tear up
the streets without regard to the city's authority, then
we have a power turned loose in the streets inconsist-
ent with the particular sovereign power delegated by
the State to the city, and liable to be destructive of the
public safety. A private citizen sometimes has the
right to dig up the street, for example, if it be neces-
sary to connect or repair a broken connection with a
water main, a gas main, a sewer, and that right the city
authorities cannot arbitrarily refuse, but the citizen
must comply with the reasonable regulations and ob-
tain permission and do the work as the ordinance
requires. The corporation has as much right as the
citizen, but no greater; that is, it has the right to dig
up the street when necessary for its business, but like
the citizen it must apply to the constituted authorities
for leave, and act under reasonable regulations. It is
argued by the learned counsel for the railroad corpo-
ration that the power to grant permission implies the
power to refuse it and thus puts the franchise at the
mercy of the city authorities. But there is a law over
the city authorities, as well as over the railroad corpo-
ration, and the ordinance is to be construed as de-
signed to effectuate a lawful and not an unlawful pur-
pose. It means that the railroad company cannot dig
up the streets without permission of the board of alder-
men, but it also means that the board of aldermen can-
not refuse permission under reasonable regulations
when the railroad company needs it."

The two sections in question here are but reasona-
ble regulations for the doing of work in the streets.

By compelling an application to be made to the city clerk, notice is brought home to the city as to what portions of its streets are liable to be put into a condition wherein danger to the traveling public may arise. By having this notice the city authorities can take such steps as may be thought best to guard and protect the public from danger and thus protect the city from damages which might otherwise accrue. Under these sections the clerk is obliged to issue a permit, unless the particular work contemplated is prohibited by ordinance. It is not a discretionary matter with the clerk. Should he refuse to grant the permit he can be compelled to do so by the proper action. His act is neither legislative nor judicial, but rather ministerial. At any rate the Telephone Company would have no trouble in procuring a permit under these sections of the ordinance, should a clerk be so arbitrary as to refuse it. The company, through these defendants, had the right to do this work, but the city in the exercise of its power over the streets, and its police powers, had the right to require the company to secure a permit, to the end that the city might be advised as to where and when the work was to be done and being so advised could take the necessary precautions to protect the public.

In the Mulholland case, supra, when in the Court of Appeals, 84 Mo. App. 1. c. 323, that court said: "It by no means follows that, since permission must be asked, it may be arbitrarily refused. Permission could not be refused for any purpose or act which the company have a right to perform. The ordinance does not attempt to take from the company any right; on the contrary, its words and enactment are an assumption that digging into and tearing up the streets will, at times, be necessary in the exercise of the rights of the citizen. And it only demands that when the right is exercised, the city must be consulted for the reasons

aforesaid. If permission should be arbitrarily withheld, without good cause, I see no reason why it could not be forced in the proper tribunal.''

This has full application to the case in hand, and fully answers the complaint as to the discretion of the clerk. The duty imposed upon the clerk is not a legislative one as stated above. The city council having control over the streets and having power to legislate concerning the same, realized that at times and places excavations would have to be made, and for the public good, and in the exercise of the police power of the city, simply says that the city must be notified of the time and place of said excavations by application for a permit, upon which application a permit must be issued unless there is an ordinance prohibiting the work to be done. That it is not an attempted delegation of legislative power is plain. [City of Centralia v. Smith, 103 Mo. App. 438.]

II. It is next urged that the ordinance is unreasonable. To this we cannot consent. Whilst the telephone exchange is in the nature of a public service, yet we have the public likewise interested on the other side. It requires but little time and exertion to make an application under the ordinance and when made the permit must go under the ordinance giving the telephone company the right to maintain its lines in the city, as well as under these sections, and when the application is made and the permit is granted the city can then protect the traveling public by proper precautionary measures. The ordinance upon its face is not unreasonable, and there is nothing in the facts before us to show it to be unreasonable. [St. Louis v. Theatre Co., 202 Mo. 690.]

III. In the third place it is contended that these sections violate the contract between the State and the Home Telephone Company, in that it imposes addi-

tional and onerous duties upon the company, not im-
posed by the general statutes under which the said
company was incorporated, and herein lies the consti-
tutional question.   Under the laws existing at the time
this company was organized in 1902, was section 5837,
supra, which expressly gave the city the power to regu-
late the setting of telephone poles.   This not only ap-
plied  to the original setting but any subsequent set-
ting.   If it be said, as it is argued, that the laws of the
State became the contract between the company and
the State, this section became a part, as well as the spe-
cific sections mentioned in article 6, chapter 12, Re-
vised Statutes 1899.   But aside from that as above
stated these two sections are but the exercise of the
police power of the city, and no contract, whether by
way of charter or otherwise, can take it away from the
city or even abridge it in the least.   If the charter
granted to a corporation, or the contract with the city,
undertook to abrogate or abridge this power, to that
extent such instruments would be void.   The corpora-
tion must exercise its charter and franchise rights sub-
ject to such reasonable police regulation as may be
prescribed by the city.   [City of Westport v. Mulhol-
land, 159 Mo. l. c. 92; State ex rel. v. Murphy, 130 Mo.
l. c. 23; State ex rel. v. Murphy, 134 Mo. l. c. 575; Rail-
road v. Milwaukee, 97 Wis. l. c. 422; Dillon's Municipal
Corporations (4 Ed.), sec. 141.]

In the Wisconsin case it is said: ''The charter of
a corporation in no sense exempts it from police super-
vision and regulation.   Such an exemption could never
be implied from a mere grant of power, and it would
not be valid if expressly conferred.   It is frequently
and rightly said that sovereign authority cannot divest
itself of its ordinary police power over persons, wheth-
er natural or artificial, any more than it can of the
power to make laws or to punish crime.''

These sections of the ordinance, whether taken

alone or taken with the statutes, the charter, and other ordinances involved, in no way violate the constitutional provisions relied upon by the defendants. The corporation is not prohibited from doing a single thing which the laws of the State, its charter and the franchise ordinance give it the right to do, but at most the doing of those things is simply subjected to reasonable police regulation.

IV. It is next urged that these provisions of the city ordinances are inconsistent with the laws of the State and repugnant to the legislative policy of the State as manifested by article 6 of chapter 12, Revised Statutes 1899. What we have said in the previous paragraph answers this contention. No contract rights, statutory rights or ordinance rights are taken away from the employer of these defendants by the two sections of the ordinance assailed in this case. In the exercise of a reasonable police power the city says to the telephone company, "before you do these things you notify us by making application to our city clerk for a permit, which we have provided that he must issue, and in this way enable us to protect the public from injury." Such may be an inconvenience, but the exercise of the police power most generally occasions more or less inconvenience.

The defendants were rightfully convicted under the law and facts of the case, and the judgment is affirmed.

All concur.