## IOWA CITY, IOWA, et al. v. IOWA CITY LIGHT & POWER CO.*
### No. 10852.

Circuit Court of Appeals, Eighth Circuit.
June 28, 1937.

*Rehearing denied Sept. 27, 1937.

D. C. Nolan, of Iowa City, Iowa, for appellants.

C. D. Waterman and Wayne G. Cook, both of Davenport, Iowa (Dan C. Dutcher and Dutcher, Ries & Dutcher, all of Iowa City, Iowa, and Lane & Waterman, of Davenport, Iowa, on the brief), for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This suit in equity was brought by the Iowa City Light & Power Company against the city of Iowa City, its mayor and solicitor and members of the city council, to enjoin the defendants from enforcing a gas rate ordinance passed by the city council April 19, 1935, and from interfering with or obstructing the plaintiff in the distribution of natural gas to the city and its inhabitants.

The plaintiff is the successor in interest to the Iowa City Gas Light Company which was granted a 25 year gas franchise by the city in 1909. The franchise expired in 1934, but there are no other means to supply gas to the city and its inhabitants, and the light and power company continues to operate as the only gas utility in the city and performs such gas utility service according to the terms of the franchise without objection from anyone. It alleged in its bill of complaint (among other things) that the gas rate ordinance of April 19, 1935, was confiscatory, void, and unenforceable, and the master to whom the case was referred so found and reported upon consideration of the evidence, and the court affirmed the report and enjoined the rates. From that part of the decree no appeal has been taken.

But it was also alleged in the bill of complaint that the light and power company had the right and had been directed by resolution of the city council, passed November 16, 1934, to serve natural gas instead of manufactured gas to its customers. That the franchise of 1909 did not, by its terms, prescribe or limit or define the character of the gas to be furnished to the city and the plaintiff has furnished different kinds of gas under its franchise, including water gas, coal gas and carbureted water gas. That it had elected to comply with the direction of the city council to serve natural gas and had incurred the expense necessary to bring the natural gas from the pipe line where it was available into the city, but that the defendants, in passing the gas rate ordinance of April 19, 1935, which fixed rates for manufactured gas only, expressed their intention to interfere with the right of the plaintiff to serve natural gas to the city and its inhabitants and have refused to permit the introduction of the natural gas and have forbidden the plaintiff the privilege of installing it.

The trial court found that the company had the right to serve natural gas and enjoined the defendants from in any way in-

terfering with the plaintiff in serving natural gas in place of manufactured gas to the inhabitants of Iowa City. At the time the suit was brought and the injunction was entered the defendants were refusing to grant permits to the plaintiff to make necessary street excavations to connect up the natural gas line with the existing distribution system at the gas works. The decree, therefore, included mandatory provisions to permit the necessary excavations to be made. Such mandatory provisions of the decree were not stayed pending this appeal and it is stated at the bar that all necessary excavations have been made by the company and the connection has been completed so that now only the adjustment of customers' equipment and substitution of gas in the mains remains to be done in order to effect the change in the service from manufactured to natural gas.

The appellants, seeking to reverse that part of the decree which enjoins defendants from preventing the service of natural gas, have contended, (1) that the suit was not cognizable in equity, (2) that the gas franchise of 1909 did not grant the right to use the city streets to supply natural gas either expressly or by implication, (3) that there was no power in the city to compel natural gas to be supplied and so there was no mutuality of obligation and the company must fail, (4) that even if the franchise authorized serving natural gas the company should not be permitted to extend its facilities in order to supply natural gas since the term of the franchise had expired, (5) the discretionary power of the city to withhold street excavation permits should not be controlled by the court, and, (6) to install natural gas would impose a burden and damage to gas consumers.

■ (1). Equity: We find no merit in the contention that the trial court was without jurisdiction in equity. The federal jurisdiction was established by the diversity of citizenship and more than $3,000 involved, as well as by the allegations that determination of the controversy involved construction of the Fifth and Fourteenth Amendments to the Federal Constitution and section 10 of article 1 thereof. In part the object of the suit was to enjoin the enforcement of rates to be charged by the utility for gas and the power of the federal equity courts to entertain bills in equity for that purpose and to grant such relief in proper cases has been too long established to require citations. 1 Hughes, Fed.Practice, 433, § 567. As the suit was properly brought in equity to enjoin the enforcement of the confiscatory rates it was the duty of the equity court to retain and exercise is jurisdiction to adjudicate all the issues presented. Alexander v. Hillman, 296 U.S. 222, 242, 56 S.Ct. 204, 80 L.Ed. 192; Hartford Accident & Indem. Co. v. Southern Pacific Co., 273 U.S. 207, 217, 47 S.Ct. 357, 71 L.Ed. 612; United States v. Union Pac. Ry. and Western Union Tel. Co., 160 U.S. 1, 51, 16 S.Ct. 190, 40 L.Ed. 319; Gabrielson v. Hogan (C.C.A.8) 298 F. 722, 726.

■ (2). The franchise: There is no limitation or definition contained in the charter of 1909 concerning the character of gas which the city authorized the Iowa City Gas Light Company to supply. The language of the grant was:

"An Ordinance Granting the Iowa City Gas Light Company, Its Successors or Assigns Permission To Use the Streets, Alleys and Public Grounds of Iowa City For the Purpose of Laying Down Pipes For Conveying Gas For the Supplying of Said City and the Inhabitants Thereof With Gas.

"Be It Ordained by the City Council of Iowa City, Iowa:

"Section 870. That the Iowa City Gas Light Company, its successors or assigns be and are hereby authorized and the privilege is hereby granted the said Iowa City Gas Light Company, its successors or assigns for the term of twenty-five years, subject to the conditions herein expressed, to use the streets, alleys and public grounds of Iowa City, including any territory that may hereafter be annexed to said Iowa City, for the purpose of laying down pipes for conveying gas for the supplying said city and the inhabitants thereof with gas."

There was a forfeiture clause: "Provided further, if in the future the said Iowa City Gas Light Company, its successors or assigns ceases in good faith to manufacture gas and to use the franchise herein granted for the period of ninety days then said Iowa City may annul and cancel all rights herein granted by giving ninety days' notice in writing to said Iowa City Gas Light Company, its successors or assigns, of its intention so to do."

The name of the grantee of the franchise, "Iowa City Gas Light Company," is reminiscent of an important use of gas in former times. Possibly gas best adapted to lighting purposes would then be uppermost in the mind of those voting a gas franchise. But we see no reason to read a restricting limitation on the kind of gas to be furnished under the franchise. Of course, the gas must be suitable for and adapted to the uses for which it is intended. So much is implied in the franchise, but no more. The franchise was not conditioned that it might be forfeited if the grantee ceased to manufacture gas but, so far as forfeiture was provided for in the charter, the right was given to the city only if the grantee ceases to manufacture gas and use the franchise (that is, "if it ceases to use the city streets for * * * conveying gas for supplying said city * * * with gas"). No condition of the franchise, either expressly or by implication, excluded natural gas. City of Laurel v. Mississippi Gas Co. (C.C.A.5) 49 F.(2d) 219; Central Power Co. v. City of Hastings (D.C.) 52 F.(2d) 487.

■ (3). Mutuality: The franchise contemplated that the grantee and its assigns and successors should have the responsibility of supplying gas and regulatory powers remained with the city, and to that extent there were mutual and reciprocal obligations. But as there was no specification in the franchise of any particular kind, quality, or character of gas which the city could require the company to furnish, the city cannot prevent the company from supplying a gas which is suitable for the uses for which it is intended and required. We do not consider Union Light, Heat & Power Co. v. Young, 146 Ky. 430, 142 S.W. 692, relied on by appellants, to be applicable.

■ (4). The expiration of the franchise: It is well settled that a public service utility operating under a city franchise is not released from its duty to render service at the moment its franchise runs out. Where the city inhabitants have become dependent upon the service and no other arrangements have been made to supply it, the obligation to serve remains on the utility whose properties still occupy the streets and public places. Neither is the city absolved from its duties by the termination of the franchise. The reciprocal duties which result from necessity when the term of the franchise expires are no less certain because the conditions are of indefinite duration. While they continue, the utility must keep the service up and the city must require the rates to be reasonable. It follows that the utility must continue to use its best effort to render its service efficiently and economically, and a reasonable choice of means remains with the company. If in order to accomplish that end it is necessary for it to lay more pipe in streets in which it has not yet laid them, the temporary nature of its tenure in nowise relieves it of its duty, nor deprives it of its right, to keep up with the requirements of its service. The rights of the utility company in the streets are not exactly the same as such rights were prior to the termination of the franchise. The right of occupancy of the street, whether by sufferance or at will, under the circumstances disclosed, arose by implication and was terminable by reasonable notice. But the fact that the charter has expired, would, of itself, afford the city, no justification to prevent the utility from installing natural gas where such installation was within the purview of the charter under which the utility service was developed and carried on. City and County of Denver v. Denver Union Water Co., 246 U.S. 178, 190, 38 S.Ct. 278, 62 L.Ed. 649; City of Roswell v. Mountain States Tel. & Tel. (C.C.A.10) 78 F.(2d) 379, 386; Hill v. Elizabeth City (C.C.A.4) 298 F. 67; State ex rel. County Attorney v. Des Moines City Ry., 159 Iowa, 259, 140 N.W. 437; Cedar Rapids Water Co. v. City of Cedar Rapids, 118 Iowa, 234, 91 N.W. 1081, 1090.

■ (5). Street excavations: The city has reserved to it at all times a reasonable discretion in the matter of granting or withholding permits to excavate for laying gas pipes in the streets. The evidence clearly disclosed that before the mandatory injunction was issued herein excavation permits were being refused the gas and light company because the city officers were denying the right of the company to supply natural gas and the appellants continue to justify the refusal of permits on that ground. As it appears that the necessary excavations to complete the installations desired by the company have now been made, it is deemed unnecessary to elaborate upon the contentions under this heading. As we are in accord with the

trial court's conclusion that natural gas may lawfully be installed by the company, it is not to be anticipated that excavations necessitated by that service will be unreasonably refused by the city.

(6). Would natural gas cause damage and burden? The plaintiff alleged in its bill of complaint that the natural gas which it proposes to distribute is a material improvement over the gas heretofore furnished, of higher thermal content, and capable of being furnished at substantially less cost to the consumer. That there is a constant increase in prices incident to the manufacture of gas and that, if the rate for manufactured gas were substantially increased, sales would tend to decrease and that the use of manufactured gas is no longer economically sound and that competitive conditions in the industry can be met only by the utilization of natural gas. The defendants put these claims in issue and alleged that natural gas is inferior in many respects and particularly that it is more hazardous; it is dirtier; contains many foreign elements that are not found in manufactured gas; that it does not have, nor can an even pressure be maintained; that the thermal or B.T.U. content thereof, although it may be of a higher quantity, is not capable or susceptible of being efficiently used or as high efficiency obtained from natural gas in respect to its higher B.T.R. or thermal content as can be obtained from manufactured or artificial gas. They also alleged that the cost to the company of installing natural gas will increase the capital investment so as to impose an unreasonable burden on the consumers.

The master analyzed the considerable volume of testimony upon the fact issues so presented and found that the natural gas proposed to be furnished by the utility is more practicable in that it is cheaper and approximately as efficient as manufactured gas. The trial court, on consideration of the master's report and the exceptions thereto, overruled the exceptions and approved and confirmed the report. Our study of the testimony has led to the conclusion that the findings are in accord with the preponderance and that the trial court did not err in sustaining them.

Each of the assignments of error has been considered, but none is sustained.

Affirmed.