268 S.W.2d 330 (1954)
STATE ex rel. BEASLEY et al.
v.
MAYOR AND ALDERMEN OF TOWN OF FAYETTEVILLE et al.
Supreme Court of Tennessee.
May 21, 1954.
*331 John V. Matthews, of Holman, Holman & Matthews, and Robert W. Stevens, Fayetteville, for appellants.
Robert W. Simms and Arthur E. Simms, Jr., Fayetteville, for appellees.
BURNETT, Justice.
This suit was filed by the appellees against the Town of Fayetteville and others praying for the issuance of a writ of mandamus to compel the defendants to issue a permit to the appellees, plaintiffs below, to sell and distribute milk products within the corporate limits of said municipality. An alternative writ of mandamus and a writ of injunction was issued as prayed in the bill on the fiat of the Chancellor. A demurrer was filed, argued and overruled and then a demurrer was re-filed along with a sworn answer of the defendants. After the answer was thus filed the appellees, complainants below, moved the court for a peremptory writ of mandamus and an injunction enjoining the prosecution of certain of their drivers. The Chancellor sustained the prayer for this writ on eight of ten grounds prayed for. The defendants excepted to this order, prayed and have seasonably perfected their appeal. We now have the matter for determination.
For all intents and purposes the bill was patterned after the holding of this Court in State ex rel. Nashville Pure Milk Co. v. Town of Shelbyville, 192 Tenn. 194, 240 S.W.2d 239, 243. The averments of the bill brought the complainants, appellees, within the requirements as set forth in the Shelbyville case. The admissions made in the sworn answer likewise brought it within the averments of that case. In other words it was averred that the complainants had met all the milk requirements of the State of Tennessee and of the Health Department of the Town of Tullahoma, Tennessee. It was likewise averred and admitted that the Town of Fayetteville was operating under a Milk Ordinance, being the 1939 edition of the United States Public Health Service Milk Ordinance, which was the same ordinance that was involved in the Shelbyville case. The only difference in the ordinance involved in the instant case was a 1947 amendment thereto which will hereinafter be referred to. The complainants likewise averred and it was admitted in the answer that their milk had received a rating of 97.5% from the Tennessee Health Department.
This Court held in the Shelbyville case that where a recognized State controlled agency has given a milk concern a rating of 90% or more that "it was contemplated by the governing authority of the Town of Shelbyville that local health officers would comply with it by issuing a permit. Any other construction of the ordinance would be unreasonable and in conflict with Code Sections 526 to 547.13, inclusive." This Court further said in the Shelbyville case that:
"The governing authority of the Town of Shelbyville exercises its police *332 powers pursuant to the express authority of the State. Any ordinance which it might enact relating to the inspection of dairies, and milk processing plants, must be reasonable and not in conflict with the general law. There could be no valid prohibition of the sale and distribution of articles of legitimate commerce within the municipality, which had been approved by duly constituted authority of the State and U.S. Public Health Service. The health authorities of every municipality must of necessity rely upon the rating given certain milk products by State and U.S. Agencies, or health officials of other municipalities, since periodical inspection of milk sheds in foreign jurisdictions cannot be made. The law indulges a presumption that inspection officers of every locality enforce the requirements of all health ordinances. If health officials and inspectors in a given locality refuse to give any recognition to a rating of milk products by other legally constituted health authorities they could thereby close the avenues of trade and commerce in violation of both State and Federal law."
Thus following the announcement of this Court as above set forth the Chancellor on the bill and sworn answer admitting all necessary averments to bring the instant case within that pronouncement, properly granted the peremptory writ as prayed for. It was held in State ex rel. Stewart v. Marks, 74 Tenn. 12, that in a mandamus case where the defendant makes a return to the alternative writ, by answer under oath, as required by law, the relator is entitled to the benefit of all admissions contained in the return, and to the peremptory writ if the facts stated are not sufficient to constitute a defense.
Item 23 of the Uniform 1939 Milk Ordinance which was in effect in the Town of Fayetteville provided:
"Cooling  Milk must be cooled immediately after completion of milking to 50° F. or less, and maintained at that average temperature, as defined in Section 1(s) until delivery. If milk is delivered to a milk plant or receiving station for pasteurization or separation, it must be delivered within 2 hours after completion of milking or cooled to 70° F. or less and maintained at that average temperature until delivered."
This section of the City Ordinance had been amended in 1947 by requiring slightly different number of degrees and also "for the purpose of accomplishing immediate cooling a covered aerator shall be installed to the cooling equipment in the milk house". Under the holding of the Shelbyville case, supra, this 1947 amendment made no difference because the complainant or relator was well within all requirements of the State law and was therefore entitled to the writ as prayed.
During the pendency of the present suit the Town of Fayetteville passed another amendment to its ordinance. This subsequent amendment was passed on July 13, 1953, and after the Chancellor had overruled the demurrer originally filed and after the peremptory writ had been granted. This amendment contains several provisions but insofar as it is necessary here to notice the only provision affecting the instant litigation is in words as follows:
"It shall be unlawful for any person, firm or corporation to bring into or receive in the Town of Fayetteville, or its police jurisdiction, for sale or to sell or offer for sale therein or to have in storage where milk, or milk products, are sold or served, any milk unless it has been handled in the following manner:
"Milk must be cooled at all dairy farms quickly to 50° F. or less during and/or immediately after the completion of the milking period and maintained at that temperature until delivered to the pasteurization plant or milk plant. This requirement shall only be deemed to have been satisfied when the milk is cooled by use of a covered aerator, or other sanitary apparatus, equipment or method, that accomplishes the complete cooling to 50° *333 f. or less of all the milk from the herd within fifteen (15) minutes after the completion of the milking of the herd."
There is also in this amendment a clause repealing any other clauses in the previous ordinance in conflict with the amendment of July 13, 1953.
The above amendment to the ordinance is made pursuant to an amendment to Section 547.12 of the 1950 supplement to the Code. This amendment is Chapter 114 of the Public Acts of 1953 and became effective on April 6, 1953, about three months before the amendment to the ordinance above was passed. Among other things the Legislature provided in amending Code Section 547.12 that a new subsection 11 should be added which reads as follows:
"11. All municipalities, cities, towns, and counties shall have the power and authority by ordinance or otherwise to set up standards concerning all milk and milk products sold within their limits, equal or higher than the standards prescribed heretofore in this Act, and such municipalities, cities, towns and counties shall have the power and authority to revoke or cancel the permit or license of any person, firm or corporation doing business within their limits who violates any of the provisions of such ordinance, or rule or regulation, or order prescribed by said municipality, city, town or county."
Obviously the question now arises whether or not the Legislature can grant cities, etc., the power to enlarge upon milk ordinances, or things of the kind within their police powers which require higher standards than the general law.
We held in the Shelbyville case, supra, following the general line of authority that milk ordinances must be in conformity with and not in conflict with governing state general laws and when an ordinance was in conflict thereof it was void. This holding is in conformity with decisions from many other jurisdictions. See text of McQuillin, Municipal Corporations, 3rd Edition, Sec. 24.415, 24.418. In none of those cases, nor in the Shelbyville case, was the proposition before the Court wherein the Legislature had specifically granted to the city the power to make ordinances to increase or make the demands on one furnishing milk greater than was provided by the State statute. This is the question that determines this lawsuit.
It is a well known fact that milk is a product easily infected with bacterial life and that it is one of the commonest sources of many of the most dangerous diseases. The vast majority of cases of typhoid fever originate in impure water or milk supply. Malt fever is generally recognized as coming almost exclusively from infected milk, and such milk is one of the commonest carriers of diphtheria. We might enlarge on this statement. It seems to us that in a State having various sized cities and conditions wherein a minimum State regulation of a requirement for all cities would not be sufficient to meet the requirements and conditions of some of the cities so as to protect the health and welfare of the citizens of other cities that such a higher requirement might be necessary. Probably having this fact in view the Legislature enacted the addition to the Code above quoted  giving cities the power to enlarge upon the requirements of the milk supplier in that city. This being true the principle was recognized by the Legislature when it directly granted to the city the right to by ordinance make more stringent regulations than the general State law. It seems to us therefore, that the amendment to the ordinance passed on July 13, 1953, not being in conflict with the general law but merely imposing stricter regulations for the sanitation of milk, that this does not violate the rule laid down in the Shelbyville case, supra. Of course where the subject of the legislation is of State-wide concern and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the State but where the Legislature in its wisdom has seen that probably some cities may need a more strict regulation we think that it is reasonable and proper that the city may *334 have this right in order to protect the health and welfare of its citizens.
An ordinance enacted in the exercise of police power is not necessarily inconsistent with a State law on the same subject because the city provides for greater restrictions or makes higher standards than is provided or made by the statute. Walker v. Missouri Pac. R. Co., 95 Kan. 702, 149 P. 677. The Legislature has granted to the city the power to enact ordinances to guard the public health and by the amendment here in question granted the city the right to make these restrictions greater than those required in the State as a whole. But in doing so the city may not pass an ordinance which ignores the State's own regulatory acts, or deny rights granted by the State or grant rights denied by the State and thus in effect nullify the State law.
Thus we feel that the city has the right to enlarge upon its requirements for milk products to be sold in the city within the terms of the reasoning above.
Since this question was not presented until about the middle of this lawsuit, that is, the city ordinance was not amended until the lawsuit had practically reached its termination in the lower court, we think the Chancellor was well within his rights and duties granting the writs prayed for. It certainly would not be right to have the complainants kicked out of court and saddled with the costs when a case took the turn that this one took in the progress of the lawsuit. This being true we think that the appellants should pay the costs and that the relator, complainants below should have sixty days from the entry of the decree by this Court within which to comply with the ordinances of July 13, 1953. If the relator, complainant, does comply within that time to the satisfaction of the Chancellor then the writ will be made permanent provided the city does not voluntarily grant a permit. It therefore becomes necessary to remand the case to the Chancery Court of Lincoln County for the carrying out of this opinion. All costs of the cause will be taxed against the appellants and the sureties on their appeal bonds.