CITY OF PARIS, TENNESSEE,

*v.*

PARIS-HENRY COUNTY PUBLIC UTILITY DISTRICT.

(*Jackson,* April Term, 1960.)

Opinion filed September 9, 1960.

Rehearing Denied October 7, 1960.

HUGH K. MCLEAN, Paris, for City of Paris.

FISHER NEAL and AARON BROWN, Paris, for Paris-Henry County Public Utility District.

MR. JUSTICE FELTS delivered the opinion of the Court.

These two cases, tried together, were prosecutions brought by the City of Paris (City) against the Paris-Henry County Public Utility District (Defendant) for violating an ordinance (No. 316) of the City by making excavations in its streets without first obtaining permits therefor and otherwise complying with the ordinance.

Defendant admitted it had made the excavations without such compliance, but insisted it had a right to do so under a prior ordinance (No. 295) which constituted a franchise and contract between the Defendant and the City; and that the later ordinance, upon which the prosecutions were based, was unconstitutional and void, as impairing the obligation of the contract in violation of the Constitution of Tennessee (Art. I, sec. 20).

The City Recorder fined Defendant $10 in each case. Upon its appeal to the Circuit Court, the cases were there tried *de novo* before the Judge without a jury. He sustained this defense, held ordinance No. 316 unconstitutional upon the ground stated, and dismissed the cases.

This issue of constitutionality being "the sole determinative question in the litigation" (T.C.A. sec. 16-408), the City appealed to this Court and insists that the Trial Court should have held the ordinance was not unconstitutional but a valid police regulation for public safety in the use of the streets.

The City's legislative body passed ordinance 295 May 19, 1956. It granted to Defendant "the exclusive right and franchise" "to lay, construct and maintain" its gas pipes under the surface of the streets and alleys, and to construct and maintain its system for distribution and sale of gas to the people of the City for 25 years, upon terms stated.

One of such terms was that Defendant should agree that upon payment by the City of all Defendant's indebtedness, including that secured by the lien on its properties and assets, it would convey the same to the City; and that this agreement should be the consideration for all the rights and privileges granted by the ordinance and "in lieu of any and all other fees, charges and licenses which the City might impose for the rights and privileges herein granted."

That ordinance contained other provisions not here pertinent and need not be stated. Defendant accepted the offer or the terms of the ordinance, and proceeded with the work of laying its pipes under the streets and of constructing its system for distribution and sale of gas.

Evidence for the City tended to prove that during the latter part of 1958 and the first part of 1959, Defendant, after excavating and laying its pipes in the streets, would fail to repair or restore the streets, and would leave in them ditches or trenches likely to endanger public travel (see photographs, Exs. 1, 2, 3, tr. p. 18, et seq.).

So, on May 19, 1959, the City's legislative body passed ordinance 316. Section 1 made it unlawful and punishable by fine for any person to make an excavation in a street without first obtaining a permit and complying with its other provisions; but provided that any person maintaining pipes under the streets might make an excavation in case of an emergency and obtain the permit later.

Section 2 provided that applications for permits should state the location of the proposed excavation, its size and purpose, the names of the person doing the work and of the person for whom it was to be done; and that the appli-

cation should be approved or rejected within 24 hours of its filing. Section 3 provided for payment of certain fees for permits. Section 2 and 3 are set out in the margin.[1]

Other sections contained provisions requiring certain deposits to be made by applicants, to insure repair or restoration of the streets; regulating the manner of making excavations and providing they should be safeguarded by barricades, lights, etc.; and requiring liability insurance to indemnify the City against liability for injuries caused by such excavations. There were other provisions not here pertinent.

■ It is true that ordinance 295, upon acceptance by Defendant, became a franchise and a contract, binding the city in its proprietary capacity, and giving Defendant the right to make use of the streets in installing its pipes; and that this contract right could not be revoked or impaired by the City. *City of Chattanooga v. Tenn. Electric Power Co.*, 172 Tenn. 524, 112 S.W.2d 385; 24 Am.Jur., Gas Companies, sec. 11, p. 676.

■ Such right, however, was subject to regulation by the City, acting in its governmental capacity under the

---

[1] Section 2. Applications. Applications for such permits shall be made to the City Manager or whatever person designated by him to receive such applications, and shall state thereon the location of the intended excavation or tunnel, the size thereof, the purpose thereof and the person, firm, corporation, association or others doing the actual excavating, and the name of the person, firm, corporation, association or others for whom the work is being done, and shall contain an agreement that the applicant will comply with all ordinances and laws relating to the work to be done. Such application shall be rejected or approved by the City Manager within twenty four (24) hours of its filing.

Section 3. Fee. The fee for such permits shall be Two Dollars ($2.00) for excavations which do not exceed twenty-five (25) square feet in area or tunnels not exceeding twenty-five (25) feet in length; and twenty-five ($0.25) cents for each additional square foot in the case of excavation, or lineal foot in the case of tunnels; but not to exceed One Hundred Dollars ($100.00) for any permit.

police power, delegated to it by the State, to regulate and control its streets for the public health and safety. Such power is broad and cannot be limited by contract. *City of Chattanooga v. So. Ry. Co.,* 128 Tenn. 399, 402, 161 S.W. 1000; *Nashville, C. & St. L. Ry. v. Middle Fork Obion Drainage Dist.,* 149 Tenn. 490, 498, 261 S.W. 975; 25 Am.Jur., Gas Companies, sec. 11, p. 672.

" ' " But the exercise of the police power cannot be limited by contract for reasons of public policy, nor can it be destroyed by compromise, and it is immaterial upon what consideration the contract rests, it is beyond the authority of the state or the municipality to abrogate this power so necessary to the public safety." ' " (Citing cases) *Nashville C. & St. L. Ry. v. Middle Fork Obion Drainage Dist.,* supra, 149 Tenn. 498, 261 S.W. 977.

So, the question is whether ordinance 316 is a valid police regulation. It is supported by a presumption in favor of its validity, and the burden is on Defendant, attacking it, to show it is invalid. *Rutherford v. City of Nashville,* 168 Tenn. 499, 511, 512, 79 S.W.2d 581; *Hermitage Laundry Co., Inc. v. City of Nashville,* 186 Tenn. 190, 193, 209 S.W.2d 5.

Defendant attacks it upon a number of grounds; first, upon the provision that no one may make an excavation in a street without first obtaining a permit to do so. It is urged that this would give the City absolute discretion and arbitrary power to refuse permits altogether, since the power to grant implies the power to refuse, and would enable the City to revoke the permission it has already granted Defendant by ordinance 295, and thereby impair Defendant's franchise and contract right.

No such construction, in our opinion, may be given ordinance 316. Its main provisions have been stated above. We think their clear meaning and intent is that while no one may make an excavation without first obtaining a permit, yet when he meets all the conditions he becomes entitled to it; that the City may refuse a permit until the applicant complies with all the requirements, but when he does, the issuance of the permit is merely ministerial duty and the City authorities cannot refuse the permit.

We think such a provision, requiring permits for excavations in the streets, is not arbitrary, unreasonable, or unduly burdensome, but is a proper police regulation designed to inform the City authorities when and where excavations are to be made, and to enable them to see that proper precautions are taken to protect the public health and safety in the use of the streets. Such a measure seems clearly within the police power delegated to the City by the State.

Similar regulations by cities, forbidding the making of excavations in the streets without permits, are quite generally upheld as reasonable and valid police regulations. *City of Carthage v. Garner,* 1908, 209 Mo. 688, 108 S.W. 521; *City of Buffalo v. Stevenson,* 1913, 207 N.Y. 258, 100 N.E. 798; *Ex parte Keppelmann,* 1914, 166 Cal. 770, 138 P. 346; *Louisville Gas & Electric Co. v. Com'rs of Sewerage,* 1930, 236 Ky. 376, 33 S.W.2d 344; *Iowa City v. Iowa City Light & Power Co.,* 8 Cir., 1937, 90 F.2d 679, 112 A.L.R. 618; 64 C.J.S. Municipal Corporations secs. 1692(b), 1694.

Defendant also attacks this ordinance on account of its provision requiring payment of fees for permits (sec. 2, quoted supra). It is urged that this requirement would

impair Defendant's franchise and contract under ordinance 295, which stipulates that Defendant's agreement therein should be the consideration and "in lieu of all other fees, charges and licenses which the City might impose for the rights and privileges herein granted."

The fees for permits under ordinance 316, however, are not "fees, charges, or licenses," imposed by the City, for any "rights or privileges" granted by ordinance 295. The latter class of "fees," etc., were a matter of contract, or rather were forbidden by the contract, between Defendant and the City acting in its proprietary capacity. *Lewis v. Nashville Gas & Heating Co.*, 162 Tenn. 268, 40 S.W.2d 409.

But the former class of fees, fees for permits under ordinance 316, are exacted by the City, acting in its governmental capacity, as an incident to its enforcement of police power regulation, and were not, and could not be, controlled or limited by the contract. *Rutherford v. City of Nashville*, supra, 168 Tenn. 511-512, 79 S.W.2d 581; *Hermitage Laundry Co., Inc. v. City of Nashville*, supra, 186 Tenn. 193, 209 S.W.2d 5; *Nashville C. & St. L. Ry. v. Middle Fork Obion Drainage District*, supra.

It does not appear that the amount of such fees is unreasonable. Upon its face, the ordinance will be presumed to be reasonable in the absence of a showing to the contrary. It is not shown that these fees will amount to more than the cost of enforcing this police regulation. "Mathematical nicety is not exacted in cases where a license fee is charged as an incident to the enforcement of a police power ordinance." *Rutherford v. City of Nashville*, supra, 168 Tenn. 512, 79 S.W.2d 586; *Hermitage*

*Laundry Co. v. City of Nashville,* supra, 186 Tenn. 193, 209 S.W.2d 5.

■ Nor do we think any attack may be sustained upon the other provisions of this ordinance, requiring deposits by applicants, regulating the manner of making excavations and of safeguarding them, and requiring persons making them to furnish insurance to indemnify the City against liability for injuries caused by them. These provisions seem reasonable, proper, and incident to such a police power regulation.

We think *Frayser v. State,* 84 Tenn. 671, relied on by Defendant, is not in point. It did not involve a police power regulation; but was an effort by the City to deny the Company's right, granted it by the State, to construct its railway in the streets. It was held the City could not do that, since a municipality may not deny a right granted by State law. Cf. *City of Memphis v. So. Ry.,* 167 Tenn. 181, 186, 67 S.W.2d 552; *State ex rel. Beasley v. Mayor and Aldermen of Town of Fayetteville,* 196 Tenn. 407, 415, 416, 268 S.W.2d 330; 14 A.L.R.2d 103.

■ For these reasons, we hold that ordinance 316 is a reasonable and valid police regulation. Therefore, the judgment of the Circuit Court is reversed and the judgment of the City Recorder Court is affirmed. The costs of the appeal in error are adjudged against Defendant.

On Petition to Rehear.

Defendant has filed a petition to rehear, asserting that this Court erred in its construction of Ordinance 316, as set forth in paragraph 1, page 889 of our opinion in 340 S.W.2d; that instead of holding that, upon compliance with the ordinance, the issuance of a permit was merely

a ministerial duty which the city authorities could not refuse, we should have held that such ordinance gave such authorities discretionary and arbitrary power to refuse to issue permits and was, therefore, unconstitutional.

■■■ Thus, the petition to rehear points out no matter of law or fact overlooked, but only reargues a matter which counsel insists was improperly decided after argument and full consideration. Such a petition presents no ground for rehearing.

> " 'The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly decided after full consideration' (*Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Co.*, 125 Tenn. 658, 691, 148 S.W. 671, 680). *Gulf, M. & O. R. Co. v. Underwood*, 182, Tenn. 467, 476, 187 S.W.2d 777, 780; *Colbaugh v. State*, 188 Tenn. 103, 112, 216 S.W.2d 741.) " *Delta Loan & Finance Co. of Tenn. v. Long*, 206 Tenn. 709, 337 S.W.2d 606, 607.

The petition to rehear is denied at petitioner's cost.