The Bristol Tennessee Housing Authority, Appellant,

*v.*

The Bristol Gas Corporation, Appellee.

407 S.W.2d 681.

(*Knoxville,* September Term, 1966.)

Opinion filed October 3, 1966.

Petition for Rehearing Denied November 10, 1966.

CRAIG H. CALDWELL, of counsel, CALDWELL & JOHNSON, Bristol, for appellant.

ERNEST F. SMITH, of counsel, HUNTER, SMITH, DAVIS, NORRIS & WADDEY, Kingsport, for appellee.

HUGH F. CAREY, JR. and MELVIN FLEISCHER, Memphis, for amicus curiae Memphis Housing Authority and Tennessee Association of Housing & Redevelopment Authorities.

MR. JUSTICE DYER delivered the opinion of the Court.

Appellee, Bristol Gas Corporation, is a public service corporation holding a franchise from the City of Bristol, Tennessee to distribute and sell gas in said city. Appellee, under rights granted by said franchise, had an underground line in Meade Alley.

Appellant, Bristol Tennessee Housing Authority, a public body and body corporate created under authority of T.C.A. Sec. 13-801 et seq., sponsored a slum clearance

project in the area of Meade Alley. In the course of this project Appellant acquired all the property adjacent to Meade Alley and in April 1965, by proper ordinance, enacted at request of Appellant, the City of Bristol, Tennessee closed Meade Alley. The closing of this alley will require Appellee to relocate its gas line and who is to bear the cost of this relocation is the issue in this suit. The trial judge held Appellant would have to bear this cost. The appeal here is upon stipulated facts.

■ Under the common law rule, predicated upon the police power of the State, utilities using the public ways under franchise grant can be required to remove and/or relocate their lines at their own expense. In the recent case of *Pack v. Southern Bell Telephone & Telegraph Co.*, 215 Tenn. 503, 387 S.W.2d 789 (1956) we had occasion to note such in the following language:

"The utilities in this case insist they have certain property rights in the public ways. We do not deem it necessary, on the issues raised in the case at bar, to decide just what property rights they do have, if any, except to say whatever property rights any of them may have, they are subject to the lawful and reasonable use of the police power of the State. In other words, *the State can, under its police power, require the removal of facilities at the expense of the utility. Such is the rule of the common law and can be preserved by contract.* Thus, in the absence of a valid reimbursement statute, relocation costs under the common law rule must be borne by the utilities involved. (Emphasis supplied) 387 S.W.2d 789.

The United States Supreme Court first stated this common law rule in the landmark case of *New Orleans*

*Gaslight Company v. Drainage Commission of New Orleans,* 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed 831 (1905):

"The gas company did not acquire any specific location in the streets; it was content with the general right to use them; and when it located its pipes it was at the risk that they might be, at some future time, disturbed, when the state might require for a necessary public use that changes in location be made."

"There is nothing in the grant to the gas company, even if it could legally be done, undertaking to limit the right of the state to establish a system of drainage in the streets. We think whatever right the gas company acquired was subject, in so far as the location of its pipes was concerned, to such future regulations as might be required in the interest of the public health and welfare."

"In complying with this requirement at its own expense, none of the property of the gas company has been taken, and the injury sustained in damnum absque injuria." 197 U.S. 453, 25 S.Ct. 471.

The rule is stated in 18 Am.Jur. Sec. 161, Eminent Domain, as follows:

"Such a franchise is, however, granted, upon an implied condition that the structures laid by virtue of its authority shall not at any time interfere with any other public use to which the state may see fit to devote the way, and consequently the corporation maintaining such structures is not entitled to compensation when the disturbance or removal of the structures or an alteration of their location is made necessary by a change in the grade of the highway, or for

the introduction therein of structures of some other character, or of the devotion of the way to some other public use." 18 Am.Jur. 793.

Appellant is but an arm or agency of the City of Bristol, Tennessee and the taking of Meade Alley, necessary as a part of a slum clearance project, was for a public purpose and serves a public use. See *Knoxville Housing Authority v. City of Knoxville,* 174 Tenn. 76, 123 S.W.2d 1085 (1939).

■ We think Appellant, engaged in slum clearance, is acting in a governmental as distinguished from a proprietary function. The reasons for this is stated in *Knoxville Housing Authority v. City of Knoxville,* supra, as follows:

"The courts reason that the primary object of all government is to foster the health, morals and safety of the people. That slum districts with their filthy, congested weather-exposed living quarters are breeding places of disease, immorality and crime. The character of the houses in such districts make of them a fire hazard. * * * They menace not only the health, safety and morals of those living therein, but since disease, crime, immorality and fires can with difficulty be confined to points of origin, these districts are a menace to the whole community—indeed, a menace to the State. 174 Tenn. 76, 123 S.W.2d 1085

■ It is true the franchise under which Appellee uses the public ways, granted by the City of Bristol acting in its proprietary capacity, is a binding contract which cannot be revoked or impaired by the city; but such rights are subject to the lawful and reasonable use, by the City, of the police power delegated to it by the State.

See *City of Paris, Tennessee v. Paris-Henry County Public Utility District*, 207 Tenn. 388, 340 S.W.2d 885 (1960).

■ It results Appellant as an arm or agency of the City of Bristol, Tennessee has deemed it necessary to close a public way (Meade Alley) in order to further a slum clearance project (a public purpose). Such is a lawful and reasonable use of the police power of the State requiring utilities (absent a valid reimbursement statute) to relocate their lines at their own expense.

The judgment is reversed.

BURNETT, CHIEF JUSTICE, and WHITE, CHATTIN and CRESON, JUSTICES, concur.

## On Petition to Rehear

Appellee, The Bristol Gas Corporation, has filed a petition to rehear as result of our opinion filed 3 October 1966. In this petition it is stated:

Mr. Justice Dyer, with the concurrence of the Chief Justice and the other Associate Justices of the court, disagreed with the learned Trial Judge, and holds that the Appellant, was, and is, acting in a governmental rather than a proprietary function, apparently, on the assumption that all of the property adjacent to Meade Alley had been acquired by the Appellant and therefore it, the Appellant, was the owner in fee of the land in Meade Alley.

We do not agree with this statement. We held Appellant acted in a governmental function under authority of *Knoxville Housing Authority v. City of Knoxville*, 174 Tenn. 76 123 S.W.2d 1085 (1939) as shown in the

original opinion. The ownership of the property adjacent to the public way (Meade Alley) would not be controlling.

After full consideration of the petition to rehear we are satisfied with our original opinion.

The petition to rehear is denied.

BURNETT, CHIEF JUSTICE, and CHATTIN and CRESON, JUSTICES, concur.