COMMISSIONER OF the DEPARTMENT OF TRANSPORTATION OF the STATE OF TENNESSEE, Plaintiff-Appellant,

v.

BEN LOMAND TELEPHONE CO–OP, INC., and United States of America, Acting Through Rural Electrification Administration, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

March 4, 1981.

B. G. Marks, Thomas J. Miner, McMinnville, Robert J. Ames, Asst. Atty. Gen., Nashville, for plaintiff-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

James W. Dempster, R. E. Bonner, Jr., McMinnville, for defendants-appellees.

OPINION

CANTRELL, Judge.

This is an appeal from a jury verdict in an eminent domain case where the State contests the right of the landowner to recover expenses for relocation of its telephone lines located on poles along a public sidewalk. The State also asserts that to allow an enhanced value for the property taken because it is frontage and then to allow incidental damages for the loss of frontage is a double assessment of damage.

Ben Lomand Telephone Cooperative, Incorporated, a public utility providing telephone service to subscribers in Warren and eight other Middle Tennessee counties, has a central office on North Chancery Street in McMinnville. At that office the telephone cables are carried from the office to the street on overhead trusses suspended between structural steel supports set in concrete. When the lines reach the street some go directly across to poles on the other side and some are attached to poles on the near or west side that run with the street in a north-south direction. A five foot wide sidewalk runs along the west edge of the street, in front of the central office, and the utility poles which carry the lines are actually set in the sidewalk approximately six inches to a foot from the edge of the street. The poles belong to another utility and Ben Lomand gets permission to use them by virtue of a joint use agreement which specifically says that no other easement or property right is acquired by the agreement.

In the late 1970's the State condemned a strip of land along North Chancery Street parallel to the existing right-of-way for the purpose of making the street wide enough for five traffic lanes. The portion taken from the front of the Appellee's property was a strip approximately 30 feet wide measured from the back or inside of the sidewalk or approximately thirty-five feet from the edge of the existing street and including the sidewalk. The ownership of the sidewalk is in dispute; the utility claims that its property extended to the street; the State claims that the sidewalk is public property. If the area taken did not include the sidewalk, the State acquired 7,782 sq. ft. from the front of Ben Lomand's lot; if it did include the sidewalk, the area taken would be approximately 8,862 sq. ft.

The case was submitted to the jury for a determination of the value of the land taken, incidental damages to the remainder, the value of a temporary construction easement, and the expenses of removing the utility lines. In addition, the jury was requested to find specially the amount of property taken. The jury's verdict was:

1. The fair market value of the land taken – $ 12,840.30
2. Incidental damages to the remainder – 15,000.00
3. Temporary construction easement – 1,000.00
4. The expenses of removing utility lines – 114,364.86
5. The amount of property taken – 7,782 sq. ft.

The amount the jury found for removing and relocating the utility lines was based on the proof of the Appellee and covered the expenses for removal and reinstallation, not only in the area of their property taken, but all along North Chancery Street from "Morford Street out to where we tied in at Village Car Wash".

Implicit in the jury's verdict about the amount of property taken is a finding that the Appellee did not own the sidewalk where the poles were located.

■ At the trial the State fought unsuccessfully to have the amount of moving expenses limited by excluding that portion which represented relocation of lines on public property. The controversy arises from an interpretation of T.C.A. § 29–16–114 (formerly T.C.A. § 23–1414) which provides in part:

"Whenever any person, agency, or other entity acquires interest in any parcel of real property and such acquisition requires the removal of furniture, household belongings, fixtures, equipment, machinery, or stock in trade of any person in rightful possession, regardless of whether such person has a legal interest in said property, the reasonable expenses of the removal shall be considered in assessing incidental damages. The reasonable expense of the removal of such chattels shall be construed as including the cost of any necessary disconnection, dismantling, or disassembling, the loading, and drayage to another location not more than fifty (50) miles distant, and the reassembling, reconnecting, and installing on such new location."

The Trial Judge charged the jury as follows:

"I have been requested and do charge you as follows: Also, regarding Item No. 4: Whenever any agency acquires interest in any parcel of real property, and such acquisition requires the removal of fixtures, equipment, machinery or stock in trade of any person in rightful possession, regardless of whether such person has a legal interest in said property, the reasonable expense of the removal shall be considered in assessing the incidental damages. The reasonable expense of the removal of such chattels shall be construed as including the cost of any necessary disconnection, dismantling or disassembling; the loading; the drayage to another location not more than fifty (50) miles distant and the reassembling, reconnecting and installing at such new location. The purpose of providing for the payment of costs of removal in eminent domain cases is to make the property owner whole. But the cost of disassembling, removal and assembling in the new location may not exceed the cost of buying and installing similar articles. Therefore, the landowner should receive the full cost of removal or replacement, but no more than the full cost of removal or

replacement as moving expenses. The defendant is entitled to receive incidental damages for moving expense in addition to compensation for the property taken and the incidental damages to its remaining property."

The State submitted two requests for special charges which the Trial Judge denied. They are:

"Under the common law rule, predicated upon the police power of the State, utilities using the public ways under franchise grant can be required to remove and/or relocate their lines at their own expense. If you the jury do not feel that the Ben Lomand Telephone Company has carried the burden of establishing by a preponderance of the evidence that its poles are not located on public property, then you shall not return as part of your verdict an amount for moving expenses that represents a portion of the utility's lines that are located upon public property.

"Under the common law rule, predicated upon the police power of the State, utilities using the public ways under franchise grant can be required to remove and/or relocate their lines at their own expense. This result is reached because public authority is granting the utility a gratuity by allowing it to locate on public property and must bear the risk that they will be required to move."

All of the above instructions are essentially correct as far as they go. The instruction given by the Trial Judge follows the statute almost verbatim. The special requests submitted by the State reflect the common law rule in Tennessee as repeated in *Pack v. Southern Bell Telephone & Telegraph Co.*, 215 Tenn. 503, 387 S.W.2d 789 (1964) and *Bristol Housing Authority v. Bristol Gas Company*, 219 Tenn. 194, 407 S.W.2d 681 (1966). However, neither the instruction given nor the one requested by the State is complete with respect to the present controversy. Some of the utility's property was actually taken but the relocation which the jury awarded compensation for did not result from the taking. It was

not the acquisition of the thirty foot strip in front of Ben Lomand's office building that required the removal of the lines "from Morford Street out to where we tied in at Village Car Wash". What required that relocation was the utilization of property already in the State's possession, with the exception of the lines that crossed the thirty foot strip taken by the State going from the central office to the poles located at the street.

Prior to 1951, the code provision allowed only for reimbursement for " ... value of the land or rights taken ...." The present provision was passed as Chapter 176 of the Public Acts of 1951. There is nothing in the statute or its predecessors to indicate that the Legislature intended to compensate a landowner for removal of equipment, fixtures or the like on any land other than that taken. Therefore, we conclude that the award for the removal and relocation expenses must be reversed and the cause remanded for a determination of the reasonable expenses incurred in removing and relocating the lines located on the property taken.

■ The second issue raised by the State concerns an asserted double assessment of damages:

" ... to put an enhanced value on the take area because it is frontage as well as to assess incidental damages due to the loss of frontage is no less than an unconstitutional double assessment of damages far in excess of just compensation established in Article I, Section 21 of the Constitution of Tennessee".

The State does not cite any other authority for its contention other than the reference to the Tennessee Constitution.

One of the appraisers for the landowner did testify that he valued the property taken at $2.00 per square foot because it was frontage while the whole tract could be valued at $1.50 per square foot. His estimate for the value of the land taken (based on 8,862 square feet) was $17,724.00. Then he testified as follows with respect to the incidental damages:

"THE COURT: Did you find that, by virtue of the taking of the smaller tract, the remaining property belonging to the Ben Lomand Company had been incidentally damaged or reduced in market value?

"THE WITNESS: Yes, sir.

"THE COURT: To what extent? How much?

"THE WITNESS: The incidental damage was thirty thousand dollars ($30,000.00).

"THE COURT: And how do you come up with that figure?

"THE WITNESS: On that figure, which it had taken some trees. There was a building on the property which the right-of-way came very close to it. And it had approximately fifteen hundred (1,500) square feet in this older building. And I depreciated the older building down to fifteen thousand dollars ($15,000.00). And, then, it had a paved drive in front of the main Ben Lomand building which—parking area was there. That has been done away with now. The street coming closer to the building, which made more noise—and they have built a sound barrier there on this building, and that is how I came up with the figure of thirty thousand dollars ($30,000.00) incidental damages."

The Court instructed the jury with respect to the value of the land taken as follows:

"Now, in your consideration of Item No. 1—value of land taken—you cannot, should not, consider any of the disadvantages, if any, arising from the taking and the use to which the purchase is intended, that might result or affect the market value of the remainder of the landowner's property, because that would be incidental to the remainder of the land, and that question is to be considered by you in Item No. 2—Incidental Damages. If you should consider that question in Item No. 1 it would result in a double assessment of damages."

The jury's verdict for the value of the land taken was $12,840.30 and for the incidental damages, $15,000.00.

It appears to us that whatever the merit of the State's argument may be as a general proposition in this case the jury did not award what the State is calling a double assessment. The amount awarded by the jury for the value of the land taken was only a little over the $1.50 per square foot value which the landowner's witness testified could be applied to the entire tract. If it was error for the Trial Judge to allow the testimony in the first instance, it appears to us that the error was harmless and did not affect the amount of the jury's verdict.

This issue is without merit.

From all of the above, the amount of the jury's award for the removal and relocation expenses is reversed and the cause is remanded to the Trial Court for a determination of the amount due the landowner for the removal and relocation of the landowner's property located on the land taken. The costs on appeal are taxed to the Appellee.

REVERSED AND REMANDED.

CONNER and LEWIS, JJ., concur.